## COSFRIFF BROTHERS v. MILLER.

TRESPASS ON UNINCLOSED LANDS WITH LIVE STOCK—DAMAGES—EX-
EMPLARY DAMAGES—EVIDENCE—INSTRUCTIONS.

1. The rule that no trespass is committed when animals lawfully running at large wander upon and depasture the uninclosed lands of a private owner does not permit the owner of cattle or sheep to wilfully and knowingly drive them upon the premises of another, although uninclosed.

2. Nothing in the statute relating to fences permits the owner of live stock to wilfully and knowingly drive them upon the uninclosed premises of another, or renders the uninclosed lands of a private owner, in opposition to his will, common pasture ground for the public.

3. The deliberate and intentional driving of live stock upon the uninclosed lands of another and depasturing the same, with knowledge that the lands are the property of another, and over the protest or against the expressed will or consent of the land owner, constitutes an actionable trespass, and such trespasser is liable in damages for the injury done.

4. Where defendants, knowing that plaintiff had leased from the owner all the odd numbered sections of land in a certain uninclosed tract about eight miles long and six miles wide, without any effort to locate the alternating even numbered sections which were unappropriated public lands, and without endeavoring to confine their sheep to such public lands, after notice and over the protest of plaintiff and against his expressed will, drove their sheep indiscriminately upon the whole tract, and actually grazed their sheep upon and depastured *all* the lands of plaintiff within such tract, claiming that they could not distinguish plaintiff's lands in the absence of artificial markings other than the survey monuments, and claiming that they had a right to graze all the lands indiscriminately, *Held*, that the facts disclosed an intention on the part of defendants to occupy and depasture all the lands in the tract, including the lands of plaintiff.

5. Complaint that the allegations of the petition are insufficient to cover special damages comes too late after verdict, when evidence showing such damages has been admitted without objection.

6. In a suit for trespass by grazing sheep upon and depasturing a large body of land belonging to plaintiff, who was the owner

of a large number of sheep ordinarily maintained by grazing on the native grasses, thereby depriving plaintiff of the use of the grass upon such depastured land, the fact being admitted that there were no other available sheep ranges in the vicinity, evidence held admissible, under a general allegation of damage, to show that during the winter immediately following the alleged trespass plaintiff necessarily incurred expense in feeding hay to his sheep in consequence of the trespass, on the ground that the same, under the circumstances, would tend to show the value of the pasture destroyed and the damage to plaintiff's possession.

7. In trespass damages accruing after the commencement of suit may be recovered where they proceed from the act constituting the cause of action.

8. Where a verdict is returned for $6,500 upon evidence showing actual damages approximating $9,000, including the loss of certain sheep by death, and the allowance of exemplary damages is proper and those probably allowed not excessive; error, if any, because of remoteness, in admitting evidence without objection of the loss of the sheep claimed to have resulted from the act constituting the cause of action, cannot be regarded as prejudicial; and the question is not material on appeal, under such facts, where the court was not called to rule on it in any way.

9. Where a tortious act is done wantonly, recklessly or maliciously exemplary damages are recoverable; and the same are recoverable, irrespective of criminal liability.

10. Where defendants, knowing that plaintiff owned all the odd numbered sections in a certain uninclosed tract of land, in disregard of notice, and against the expressed will of plaintiff, deliberately and intentionally drove their sheep thereon and depastured the same; and, after being driven off, repeatedly drove the sheep upon said premises, stating that "plaintiff had the law, and their sheep were there and could not be moved;" and thereupon "put out armed men" for the purpose, as testified by one of defendants, of protecting their herds against "the depredation of wolves in any form," and their employees announced their instructions to kill anyone bothering the sheep, whether on plaintiff's land or not, and defendants stated that they would take their sheep "wherever it may be." *Held,* in a suit for trespass, that the evidence justified instructions relative to exemplary damages.

11. A claim by defendants that they had a right to drive and graze their sheep on plaintiff's lands because they were unin-

closed and not artificially marked as to boundaries to distinguish them from alternating sections of public land, although made in good faith under a mistaken notion of the law, is not such a claim of right sufficient to absolve them as trespassers from exemplary damages, where the case otherwise warrants their recovery.

12. Upon the facts exemplary damages in the sum of $3,500 held not excessive.

13. The giving of certain instructions and refusal to give others relative to trespass on uninclosed lands, and relative to damages, upon the facts of the case, considered and sustained.

14. In cases of tort, where exemplary damages are claimed, evidence is admissible of the pecuniary condition of defendant.

15. Upon the evidence the damages assessed held not excessive.

[Decided March 31, 1902.]

ERROR to the District Court, Carbon County, HON. DAVID H. CRAIG, Judge.

Action by Isaac C. Miller against John B. Cosgriff, Thomas A. Cosgriff and James B. Cosgriff, co-partners under the firm name and style of Cosgriff Brothers, in the District Court, sitting within and for the County of Carbon, for injunction and for damages in relation to certain alleged trespasses upon lands claimed by the plaintiff situated in said county; said trespasses being alleged to have occurred by driving sheep upon and depasturing said lands. A temporary injunction was granted. From a judgment rendered on the verdict of a jury in the sum of $6,500 damages in favor of the plaintiff, the defendants prosecuted error. The material facts are stated in the opinion.

*F. Chatterton* and *Van Orsdel & Burdick,* for plaintiffs in error.

*First*—Under the state of facts set forth in the petition and answer, taken together, there was no cause of action. (a) The old common law rule that one must restrain his cattle, and that the owner of a close need not fence, does not prevail in this country. (b) The fence and brand laws are inconsistent with such common law rule, and, therefore, repeal it.

*Second*—It is unlawful to fence or use private lands so as to prevent others from having access to the government lands interspersed therewith, and, therefore, the public have a right of way.

*Third*—There is no trespass in driving and grazing sheep upon the unenclosed lands of another, and especially is this so where there are no means of distinguishing them from other adjacent and unfenced and unoccupied government lands.

*Fourth*—To constitute such a trespass as is charged in the petition, intent must be shown. If a person shows that he did not know he was trespassing, under a charge of malicious trespass, he is not liable.

Even if this were a trespass, in which there was a cause of action, we contend:

*First*—That punitive or exemplary damages could not legally become a question for consideration by the jury upon the trial of the case. (a) Where the act complained of is punishable as a crime, no punitive or exemplary damages are allowable. (b) Punitive damages cannot be had where one acts in good faith under a reasonable, though mistaken, belief that he has a right. (c) In order to justify giving punitive or exemplary damages, the act must be done with evil intent and purpose to injure, or the act must be done with fraud, malice or through gross negligence. (d) Punitive or exemplary damages cannot be recovered where actual damage is not shown.

*Second*—Only such damages as are compensatory for the wrong done are allowable.

*Third*—Punitive or exemplary damages should never be allowed—unless, perhaps, in cases of injuries to the person—and, therefore, as it is a new and open question in this State, should not become incorporated as a part of the law of the State other than by Legislative enactment.

*Fourth*—Evidence of special damage is not admissible unless such damage is pleaded.

Under the facts in this case, there was no right of action

for the reason: That the common law rule of England requiring one to restrain his cattle, and not requiring one to fence his close, does not and never did prevail in or become, in reason or by custom, applicable to this country; and especially is this true of these Western States, where the raising of herds of cattle entirely by grazing, and without enclosures, upon the open ranges, has been the custom from the beginning, and is, by reason of that privilege, the chief and until very recently almost the only support of the inhabitants of the State. (See Buford v. Houtz, 5 Utah, 591, affirmed in Buford v. Houtz, 133 U. S., 320, approved by Lazarus v. Phelps, 152 U. S., 81; Moses v. Ry. Co., 8 L. R. A., 135; Waters v. Moss, 12 Cal., 535; Comerford v. Duprey, 17 Cal., 306; Logan v. Gedney, 38 Cal., 579; Hecht v. Harrison, 5 Wyo., 286; Morris v. Fraker, 5 Colo., 425; Woodward v. Purdy, 20 Ala., 379; R. R. Co. v. Peacock, 25 Ala., 229; R. R. Co. v. Williams, 53 Ala., 595; Hurd v. Lacy, 53 Ala., 595; Jonier v. Winston, 68 Ala., 129; Hurd v. Lacy, 93 Ala., 427; 36 Ark., 562; Misner v. Lightshall, 13 Ill., 609; Seeley v. Peters, 10 Ill., 130; Ry. Co. v. Cauffman, 38 Ill., 424; Headen v. Rust, 39 Ill., 186; Stoner v. Shugart, 45 Ill., 76; Wagner v. Bissell, 3 Iowa, 396; Heath v. Coltenback, 5 Iowa, 490; Alger v. R. R. Co., 10 Iowa, 268; Smith v. Ry. Co., 34 Iowa, 506; Ry. Co. v. Johnson, 65 Tex., 389; Pace v. Potter, 85 Tex., 476; Gorman v. Pacific R. R. Co., 26 Mo., 445; R. R. v. Kenney, 41 Mo., 271; McPheeters v. R. R. Co., 45 Mo., 22; R. R. Co. v. Elliot, 4 O. S., 474; Kerwhacker v. R. R. Co., 3 O. S., 172; Campbell v. Bridewell, 5 Ore., 311; Walker v. Bloomingcamp, 43 Pac., 175; Sprague v. Ry. Co., 6 Dak., 86; R. R. Co. v. Patton, 31 Miss., 156; Knight v. Abert, 6 Pa. St.; Stadwell v. Rich., 14 Conn., 292; Wright v. Wright, 21 Conn., 344; Larkin v. Taylor, 5 Kan., 434; Darling v. Rodgers, 7 Kan., 592; Chase v. Chase, 15 Nev., 259; Baylor v. R. R. Co., 9 W. Va., 270; Blaine v. R. R. Co., 9 W. Va., 252; R. R. Co. v. Baber, 42 Ga., 300; Murray v. R. R. Co., 10 Rich., 227; Laws v. R. R. Co., 7 Jones, 468; Jones v. Witherspoon, 7 Jones, 555; 66 Am. Dec., 552.)

The Legislature of the Territory, recognizing the inapplicability of the common rule to the conditions which prevail in the West, and the weight of authority against the rule, enacted, in December, 1869, a fence law. (Chapter 51, Comp. Laws, 1876, which is, with but few changes, now the law of the State; Chap. 5, Title 13, Div. 1, Rev. Stat., 1899.) By this law a right of action in trespass for depredations of live stock upon lands is only given where lands are enclosed by a "lawful" fence. If the common law rule had prevailed here there could have been no need of such legislation. In further recognition of the fact that the rule does not apply, and that there is no right of action against a person for using or grazing upon unfenced lands owned by another, the Legislature, in order to protect the State in its open and unfenced land holdings scattered through its entire area, enacted a trespass law, applicable to state lands only. (Sec. 838, R. S., 1899.)

It would also seem that the Legislature recognized the principle for which we contend in enacting the brand laws. (Chap. 1, Title XIV, Div. I, R. S., 1899.) That these fence and brand laws conflict with and repeal the common law rule, and negative its existence, see Waters v. Moss, 12 Cal., 533; Comerford v. Duprey, 17 Cal., 308; Morris v. Fraker, 5 Colo., 425; Logan v. Gedney, 38 Cal., 579; Fant v. Lyman, 22 Pac., 120 (Mont.).

*Second*—It has become an established rule in this Western country, not only by long custom, but by United States statute, that it is unlawful to so fence or use private lands as to prevent others from having access to the government lands interspersed therewith, and, therefore, the public have a right of way, or way of necessity, over private lands, and especially is this so where lands are unfenced, as in the case at bar, and the owner of odd numbered sections of land acquired from the Union Pacific Railroad Company, who, in turn, acquired such lands from the government, takes and holds such lands subject to an easement of right of way, to all even numbered sections interspersed therewith, which

easement was impliedly reserved by the United States government at the time of its grant to the Union Pacific Railroad Company. (U. S. v. Buford, 8 Utah, 176; U. S. v. Camfield, 59 Fed., 562.)

The case last cited is affirmed by the Circuit Court of Appeals in 66 Fed., 101, and holds that the case of United States v. Douglas-Willan Sartoris Co., 3 Wyo., 288, is not the law; and the case is also affirmed by the United States Supreme Court in 167 U. S., 518.

*Third*—There can be no trespass in this Western country in driving and grazing sheep upon the unenclosed lands of another. (Buford v. Houtz, 133 U. S., 320; Lazarus v. Phelps, 152 U. S., 81.)

In order to maintain such trespass as alleged, intent must be shown. In the case at bar the plaintiffs in error proved that they simply desired to graze the government lands, as they had a right to do, and there is no evidence indicating any other intent. They proved they did not know, and the conditions of the lands—no marks being present to distinguish them by—is evidence that they could not know they were upon the lands belonging to defendant in error. (Lowe v. Salt Lake City, 13 Utah, 91; Yoakum v. State, 21 Tex. App., 260.)

But even though it be held there was a right of action in trespass, nevertheless we submit that in this case, under the pleadings and proof, no more than nominal damages could be found. It is elementary that proof must conform to the allegations contained in the pleadings. There was evidence introduced, over objection, by which an attempt was made to prove the loss of sheep by reason of the alleged trespass, said loss occurring throughout the winter and beginning more than two months after bringing of suit. This evidence was improper, there being no allegation in the pleadings of any loss of sheep. The only allegation of direct and actual damages is for the loss of grass to the amount of $2,800, as to the value of which there was no evidence whatever given upon which the jury could base a finding. The verdict was, there-

fore, not only contrary to law, but was not sustained by evidence, and resulting damages such as were improperly attempted to be shown are too remote. (Clark v. Nevada L. & M. Co., 6 Nev., 203; Watt v. Ry., 23 Nev., 154; Ry. Co. v. Johnson, 65 Tex., 389; Thayer v. Brooks, 17 O., 469.)

Under the pleadings, the evidence, and the law applicable thereto, the verdict of the jury in the sum of $6,500 must be considered a finding in its whole amount as punitive damages. Admitting, only for the argument, that there was. a right of action in trespass, exemplary damages could not legally become a question for consideration by the jury in this case, and, therefore, the court erred in giving, at the request of defendant in error, the instructions numbered 11, 12 and 13.

(a) Because where the act complained of is punishable as a crime, no such damages are recoverable. The petition throughout alleges an unlawful trespass. Such trespass is punishable as a crime by Section 4996, Rev. Stat. (Fay v. Parker, 53 N. H., 342; Murphy v. Hobbs, 7 Colo., 541; Conwoisier v. Raymond, 23 Colo., 118; Keil v. Gas Co., 131 Pa. St., 466; Boyer v. Barr, 8 Neb., 68; Huber v. Teuber, 3 McArthur, 484; 36 Am. Rep., 110; Albrecht v. Walker, 73 Ill., 69; Taber v. Huston, 3 Ind., 322; Struble v. Nordwift, 11 Ind., 64; Butler v. Mercer, 14 Ind., 479; Nessaman v. Rickert, 18 Ind., 350; Humphries v. Johnson, 20 Ind., 190; Moyer v. Gordon, 113 Ind., 282, and cases cited; Wabash P. & P. Co. v. Crumrine, 123 Ind., 89.) And in Colorado it was held, in the case of Greeley S. L. & P. Co. v. Yeager, that, though tort was not punishable as a crime, exemplary damages could not be recovered.

(b) Neither can such damages be had where one acts in good faith under a reasonable, though mistaken, belief that he has a right. Plaintiffs in error so acted; they claimed the right to pasture the government lands interspersed with lands described in the petition; they claimed nothing more, and they believed they had a right to go to those lands for that purpose, over the unfenced lands; they could get to the

government lands in no other way. The highest authority of the nation (133 U. S., 320) sustained them in that right. (Ulander v. Orman (Tex. Civ. App.), 26 S. W., 1103; 1 Sutherland, p. 724, and Cases Note 3; 5 Enc. L., 21, Cases Note 3, 1st Ed.; 12 Enc. L., 25, Cases, 2nd Ed.)

(c) In order to justify giving such damages the trespass must be done with an evil intent and purpose to injure, with malice, or by fraud, or through gross negligence. The evidence will not support, in any particular, a charge against the plaintiffs in error of any one of the above requisites. (12 Enc. Law, p. 21, Par. 6; Moore v. Crose, 43 Ind., 30; Crymble v. Muloney, 11 Colo., 210; Grafton v. Thompson, 32 Kan., 367; Bryam v. McGuire, 40 Tenn., 530; Springer Transp. Co. v. Smith, 16 Lea (84 Tenn.), 498; R. Co. v. Statham, 42 Miss., 607; Hoskins v. Huling, 2 Tex. Civ. App., 157; Stillwell v. Barnett, 60 Ill., 210; McMannanny v. Cohick, 1 Mo. App., 529; Pruett v. Cheltenham Q. Co., 33 Mo. App., 18; McKeon v. Ry. Co., 42 Mo., 79; Inham v. Ball, 65 Ia., 543; 3 Sutherland, 389, and cases cited Note 3; Wilkinson v. Searcy, 76 Ala., 176; R. Co. v. Hoeflich, 62 Md., 301; 50 Am. Rep., 223.)

The mere fact that a person intended to commit trespass will not justify inference of malice. Nor is a wrongful act done intentionally, as a matter of law, necessarily done with malice. (Keirnan v. Heaton, 69 Ia., 136; French v. Deane, 19 Colo., 504.)

(d) Neither can such damages be given where no actual damage is proven. The evidence in this case does not disclose that defendant in error suffered any actual damage prior to the bringing of the action; the only actual damage pleaded being for grass, and no evidence is found as to the value of said grass. (Schippel v. Norton, 38 Kan., 567; Adams v. Salina, 58 Kan., 246; Gillmore v. Mathews, 67 Me., 517; Stacey v. Pub. Co., 68 Me., 279; Fruse v. Tripp, 70 Ill., 496; Meidel v. Anthis, 71 Ill., 241; Keedy v. Howe, 72 Ill., 133; Fentz v. Meadows, 72 Ill., 504; Brantigan v. White, 73 Ill., 561; Maxwell v. Kennedy, 50 Wis., 645;

Carson v. Tex. Inst. Co. .(Civ. App.), 34 S. W., 762.) And where it is clear that the judgment is in excess of the actual damage proved, and the facts are not such as authorize exemplary damages, it is error. (Gravett v. Mugge, 89 Ill., 218; Kilgannon v. Jenkinson, 57 Mich., 327.)

Only such damages as are compensatory for the wrong done are allowable. (Seely v. Alden, 61 Pa. St., 302; Stuyvesant v. Wilcox, 31 Am. St. Rep., 580; 92 Mich., 233; 2 Greenleaf, Sec. 253.) (a) The measure of damages for the destruction of grass is its value at the time destroyed. Or, under certain circumstances, it may be the value of the use of the pasture. (Broussard v. Ry. Co., 80 Tex., 331.) In either case the fact that the cattle become poor and die for want of pasturage is too remote and cannot be considered; further, if considered, it would authorize double recovery— first, for loss of use of pasturage; second, for loss of cattle. (Ry. Co. v. Johnson, 55 Tex., 389; R. Co. v. Joackimi, 58 Tex., 460; Railway v. Hesley, 62 Tex., 593; R. Co. v. Broussard, 69 Tex., 617; R. Co. v. Horne, 69 Tex., 643; Broussard v. Ry. Co., 80 Tex., 331; Seeley v. Alden, 61 Pa. St., 302; Gresham v. Taylor, 51 Ala., 505.) (b) Special damage cannot be recovered unless pleaded. It is, therefore, error to admit evidence of such damage unless particularly specified in the pleadings. (2 Greenleaf, Sec. 254.) (c) In the absence of an instruction as to the true measure of damages, the admission of evidence of special damage not plead undoubtedly had a tendency to mislead the jury, and was error. (R. Co. v. Joackimi, 58 Tex., 460.)

*Third*—The question of punitive damages, in this class of cases, is a new and open question in this State, it not having been before the court except in a case of personal injury. (R. R. v. Hause, 1 Wyo., 27.) It seems to us, for the many reasons set forth in the authorities cited below, that such damages should not become incorporated in our laws through the ruling of the court, but only through legislative action. Many states do not recognize the doctrine. It was not allowed in Colorado until placed upon the statutes by a special

act of the Legislature, covering certain cases, in 1869. (French v. Deane, 19 Colo., 504.) This whole question is very ably discussed in Fay v. Parker, 53 N. H., 342. (See also Spokane T. & D. Co. v. Hoefer, 26 Am. St. Rep., 842; 2 Wash., 45; Boyer v. Barr, 8 Neb., 68; Riewe v. McCormick, 11 Neb., 261; Bolat v. Bridwig, 19 Neb., 739; Stilson v. Gibbs, 53 Mich., 280; Lucas v. R. R., 98 Mich., 1; Ry. Co. v. Yeager, 11 Colo., 345.)

It was prejudicial error to admit evidence of wealth of defendants below. (Taber v. Hutson, 5 Ind., 322.)

*McMicken & Blydenburgh* and *J. W. Lacey,* for defendant in error.

Although there are some sixty assignments of errors set forth in the petition in error, but few of them are argued or presented in the brief of plaintiffs in error, and all assignments not presented in their brief are waived. (The Syndicate Improvement Co. v. Bradley, 6 Wyo., 177; Boswell v. Bliler, 9 Wyo., 277.)

Plaintiffs in error seem to regard the principle here involved the same as the common law rule, requiring one to restrain his cattle, and not requiring one to fence his close. It seems to be contended by plaintiffs in error that our recovery here is based upon this common law rule, which they say is inapplicable to our conditions. We admit that the common law rule, as stated by counsel, is not applicable here to our conditions; and further contend that it is not at all involved in the case here. The principle upon which we have recovered is a very different principle. The law is perfectly clear in this region that one may not drive his live stock upon the uninclosed lands of another against the will of the owner. We believe this principle so clearly settled as to require no particular discussion, and several of the cases cited in the brief of plaintiffs in error under their first point so hold. We cite in addition. (Delaney v. Erricson, 11 Neb., 533; Powers v. Kindt, 13 Kan., 74; Nuckolls v. Gant, 21 Pac., 41; Lazerus v. Phelps, 152 U. S., 81; Ton-

owanda v. Monger, 49 Am. Dec., 249; Note, Meyers v. Dodd, 68 Am. Dec., 636; Cooley on Torts, 337; Chase v. Chase, 15 Nev., 259; Clarendon, &c., Co. v. McClell, 68 Tex., 179; Findley v. Bradley, 21 S. W., 609; Hine v. Wooding, 37 Conn., 123; Misner v. Lighthall, 13 Ill., 609; Ebres v. Wehmeyer, 69 Ia., 85; Harrison v. Addison, 76 Ia., 337; Bileu v. Paisley, 18 Ore., 47; Monroe v. Cannon, 61 Pac., 863; Willard v. Mathesus, 7 Colo., 76.)

It is claimed that the only intention in making the trespasses was to graze the government lands. We insist that the evidence positively shows the trespass upon the lands, the refusal to get off when told they were the lands of the defendant in error, a willful driving of the sheep back upon the lands when driven away, and a practical entrenchment of the plaintiffs in error upon the lands of the defendant in error by arming their men and "standing off" the employees of the defendant in error, who attempted to remove the sheep from his lands. This is evidence all proving the trespass willful and intentional upon the lands of the defendant in error.

The plaintiffs in error claim that there is no foundation in the petition for special damages, and that the admission of the evidence as to the necessity for the defendant in error to feed hay, and as to the resulting loss of sheep by death, was error; and that, having been admitted under objection, it will not sustain the verdict so far as to allow any portion of the verdict to rest upon these special damages.

It is averred in the petition, and also in the answer, that there was no other feed in the vicinity; that the other lands upon which sheep might graze were all occupied; and the petition avers what would be known as the natural consequences, and the taking of the pasturage from the lands in question, would necessarily result in the loss of sheep. We contend, therefore, that the pleadings lay the foundation, not with great strictness, it is true, but with sufficient certainty to admit the proof of the special damages, even had there been objecion to this proof based upon the ground of the

absence of necessary averments. *The fact is, however, that objection was not made as counsel assume.* "If no objection is made when offered, evidence as to special damages cannot be ruled from the jury by instructions after the evidence in the case is closed; and will furnish no grounds for a new trial. Unless the objection is made when the evidence is offered, it is deemed to have been waived." (Lashus v. Chamberlain (Utah), 24 Pac., 188; Boston & Ry. Co. v. O'Reily, 158 U. S., 334; Patrick v. Graham, 132 U. S., 627; Roberts v. Graham, 6 Wall., 578; Moshier v. Lawrence, 4 Den., 421; Plunkett v. R. R. Co., 79 Wis., 222; Chandler v. Ellis, 10 Mich., 460.)

The value of the grass growing upon the land which was depastured, according to the evidence, not having a market value such as hay would have, all such evidence was admissible as would tend to show the jury its real value. (Watt v. Ry., 44 Pac., 423.) And prospective damages are allowed on proof that they are reasonably certain to occur; how much more when they are proved to have occurred. When certain facts are offered in evidence to increase or diminish the damages, whether they are admitted or rejected, will usually be found to depend not upon particular rules of evidence, but upon the question of whether they are or are not proper elements of damages. No general rules therefore can be laid down; but it may be said that the courts admit *all facts tending to show the extent of the plaintiff's injury*, and reject all evidence speculative in its nature which is introduced rather for its effect upon the jury than for the purpose of showing actual injury to the plaintiff. (5 Ency. L., 64, 1st Ed.) In Sutherland on Damages, Vol. I, pages 160-161, it is said: "The motive with which a wrong is done ni some cases affects the rule by which compensation is measured or losses estimated. When there is fraud or other intentional wrong there is not the same strictness to exclude *remote* and *uncertain* damages, *even when punitive damages are not involved*."

Therefore, the verdict need not be considered as a finding in its whole amount as punitive damages, as there was proof

of actual damages to the amount of $9,000, which was not contradicted.

Whatever might be the rule under ordinary circumstances, even though the law might presume in all ordinary circumstances that the defendant in error could purchase feed on the ground at what might be proven to be the market value of such feed, this case is not of that character. Manifestly the rule limiting the recovery to the market value of the grass as it stood, in ordinary cases, is based upon the presumption that other similar grass could be purchased at a market price for the use of the defendant in error; but when the reason for this rule fails, the rule itself fails. After all, this is but another way of stating that defendant in error, if the facts warrant it, may recover special damages. The ordinary rule in this case failed. There was no other available grass in the vicinity. This alone, we concede, would not make a case for special damages—in other words, would not take the case out of the reason for the usual rule. But when, in addition to the absence of other grass available for the defendant in error, we have the further fact known to the plaintiff in error that the defendant in error had sheep in the vicinity that must be fed, and for whose sustenance this particular grass was required, this fact, coupled with the impossibility of procuring grass to take its place, make the case one in which we could recover for the consequences of the acts of the plaintiffs in error. These acts deprived the defendant in error of the feed for his sheep and compelled him to feed hay instead, because no other grass was available, and for the same reason caused a heavy loss among his sheep. (Gilbert v. Kennedy, 22 Mich., 117.)

The defendant in error had a right to recover: (1) The shrinkage in the value of his flocks (in this case by their death, rather than by their loss in weight), and (2) the value of that which he was compelled to substitute for the feed taken from them by the plaintiffs in error. (McAfee v. Crofford, 54 U. S., 447; Chapman v. Ruby, 49 Ill., 211; Johnson v. Crouts (Md.), 3 Har. & M., 510; Denny v. Flitner, 118 Mass., 131.)

It is contended that the court erred in submitting to the jury the question of exemplary damages; and upon this question of exemplary damages counsel make three points, which we will take up in their order : (1) It is contended by plaintiffs in error that where an act complained of is punishable as a crime, no exemplary damages are recoverable. There are a few authorities which hold as counsel claim. We have not by any means exhausted the subject, but the following cases hold clearly and distinctly that the fact that an act is punishable as a crime does not prevent the recovery of exemplary damages. A number of the cases had been actually punished as crimes, and yet exemplary damages were permitted. (Hauser v. Griffith (Ia.), 71 N. W., 223; Rhodes v. Rogers (Pa.), 24 Atl., 1044; Hoadley v. Watson, 45 Vt., 289; Roach v. Caldbeck (Vt.), 24 Atl., 989; Brown v. Evans (U. S.), 17 Fed., 912; Boyle v. Case, 18 Fed., 880; Barlow v. Lowder, 35 Ark., 492; Wade v. Thayer, 40 Cal., 578; St. Ores v. McGlashen, 74 Cal., 148; Bundy v. Maginess, 76 Cal., 532; Tatnall v. Courtney (Del.), 6 Houst., 434; McNamara v. King, 7 Ill., 432; Ously v. Hardin, 23 Ill., 352; Drohn v. Brewer, 77 Ill., 280; Harrison v. Ely, 120 Ill., 83; Hendrickson v. Kingsbury, 21 Ia., 379; Guengerich v. Smith, 36 Ia., 587; Redden v. Gates, 52 Ia., 210; White v. Spangler, 68 Ia., 222; Root v. Sturdevant, 70 Ia., 55; Crosby v. Bradley, 11 Ky. L. R., 954; Scheen v. Poland, 34 La. Ann., 1107; Pike v. Dilling, 48 Me., 539; Johnson v. Smith, 64 Me., 553; Webb v. Gilman, 80 Me., 177; Alford v. Vincent, 53 Mich., 555; Bell v. Morrison, 27 Miss., 68; Meyer v. Polman, 12 Mo. App., 567; Beck v. Dowell, 111 Mo., 506; Canfield v. Chicago, 59 Mo. App., 354; Tift v. Culver, 3 Hill, 180; Walker v. Wilson, 21 N. Y. S. C., 586; Causee v. Anders, 20 N. C., 246; Louder v. Hinson, 49 N. C., 369; Roberts v. Mason (Ohio), 10 O. S., 277; Shook v. Peters, 59 Tex., 393; Rowe v. Moses (S. C.), 67 Am. Dec., 560; Sargent v. Cawes, 84 Tex., 156; Jackson v. Wells (Tex.), 35 S. W., 528; Edwards v. Leavit, 46 Vt., 126; Devine v. Rand, 38 Vt., 621; Beck v. Thompson, 31 W. Va.,

459; McWilliams v. Bragg, 3 Wis., 424; Richard v. Booth, 4 Wis., 67; Jefferson v. Adams, 4 Har., 321; Corwin v. Walton, 18 Mo., 71; Towle v. Blake, 48 N. H., 92; Cook v. Ellis, 6 Hill, 466; Brown v. Swineford, 44 Wis., 282; Wilson v. Middleton, 2 Cal., 54; Smith v. Bagwell, 19 Fla., 117; Ward v. Ward, 41 Ia., 686; Boetcher v. Staples, 27 Minn., 308; Brannan v. Silvernail, 81 Ill., 434; Garland v. Wholham, 26 Ia. 185; Jockers v. Borgman, 29 Kan., 109; Barr v. Moore, 87 Pa. St., 385; Cole v. Tucker, 6 Tex., 266; Chiles v. Drake, 59 Ky., 146; Baldwin v. Fries, 46 Mo. App., 288.) And even if the above contention of counsel were the law, it would have no application in this case, as the statute cited (Sec. 4996, Rev. Stat.) refers to the *enclosed* lands of another; and under the circumstances proved in this case the plaintiffs in error could not have been convicted on a complaint drawn under Section 4996, as they were not guilty of the offense specified in that section.

(2) It is claimed that exemplary damages cannot be recovered where one acts in good faith under the reasonable, though mistaken, belief that he is right. We may concede the correctness of the proposition. The difficulty is that this is not a case of acting in good faith under a reasonable belief in the plaintiffs in error that they had a right. It is possible that the plaintiffs in error have so far mistaken the law as to believe they had the right to depasture everybody's land which they found unfenced. The law, however, does not recognize any such mental obliquity; and it insists that the plaintiffs in error know the law, and that they had knowledge at the time that they had no right whatever to hold the lands of the defendant in error and depasture them against his consent and against his open opposition. (Jasper v. Parnell, 67 Ill., 358; Farwell v. Warren, 51 Ill., 467.)

This is not a case where the plaintiffs in error claim ownership in any part of the lands of the defendant in error. It was a claim that they had a right to go there against the will of the owner, and hold their sheep there in spite of his efforts to drive them away, and in this way deprive him of the

means of feeding his own sheep. In addition to that, the matter has been submitted to the jury and has been passed upon by them under all the evidence, and has been conclusively settled for this case that the plaintiffs in error were not there in good faith.

(3) It is claimed by counsel that exemplary damages cannot be given where no actual damages have been proven. Our answer to this is twofold. On the one hand, we claim that the law is not as laid down by counsel. In support of their proposition they cite several cases, and, among the rest, five from the State of Illinois. All of these cases were for damages under the Illinois liquor act; and a perusal of the cases themselves will show that the Supreme Court of Illinois bases its ruling against exemplary damages in these cases upon the wording of the statute which gave the damages in the first place. But in that State a different rule prevails in ordinary trespass cases. (Alcora v. Mitchell, 63 Ill., 553; Blanchard v. Burbank, 16 Ill. App., 375; McMay v. Stratton, 9 id., 215.)

It has been held in a number of cases in the United States, where the matter is not controlled by some special act, as in the Illinois cases, *supra.*, that exemplary damages are recoverable, even where the actual damages are nominal. (Wilson v. Vaughn, 23 Fed., 229; Day v. Woodworth, 13 How., 371; Milwaukee Co. v. Arms, 91 U. S., 493; Press Pub. Co. v. Monroe, 73 Fed., 196; Alabama, &c., Co. v. Sellers, 9 Southern, 375; Hefley v. Baker, 19 Kan., 9; Furguson v. Evening Chronicle, 72 Mo. App., 462; Prince v. Brooklyn Daily Eagle, 37 N. Y. Supp., 250; Blanchard v. Burbank, 16 Ill. App., 375; Favorite v. Cottrill, 62 Mo. App., 119.)

The damages here that were sustained by the defendant in error were substantial, and could in no sense be considered merely nominal; and they are proven with sufficient certainty; but if there should be found any uncertainty in the amount of damages actually proven, that is not a ground for refusing to permit recovery. It would be the duty of the jury to take the evidence as a whole, and out of the uncer-

tainty assess such damages as they deemed right under the proof. (Wakeman v. Wheeler, 101 N. Y., 205; Bluegrass v. Luther, 33 S. W., 835.)

The damages did not fully culminate until after suit brought. Damages caused by a trespass, but developing after suit brought, and the consequences of the trespass are recoverable. The principle is that the law contemplates the entire damage from the time the act is done. (Birchard v. Booth, 4 Wis., 67; Dickinson v. Boyle, 17 Pick., 78; Curtis v. Ry. Co., 18 N. Y., 534; Schell v. Plumb, 55 N. Y., 592; Sedgwick on Damages, 104; 2 Greenleaf on Evidence, Secs. 268a, 268b; Wilcox v. Plumber, 4 Pet., 172; Hicks v. Herring, 17 Cal., 566; 5th Nat. Bank v. N. Y. Elevated, 28 Fed., 231; Filer v. Nye, 49 N. Y., 42; Thompson v. Elsworth, 39 Mich., 717.)

The states which hold that punitive damages are not recoverable, that is, which hold that no damages should be allowed for mere punishment, but only such damages as are compensatory, all hold, however, that where bad motives are shown or such circumstances as would make punitive damages allowable were they are recognized, that *full* compensation is allowed, and that the bad motive which characterized the wrong aggravates the damages and a more liberal extension of compensation to the injured party, and that remoter damages in such case are recoverable. The rules are relaxed and damages given with a more liberal hand. (Sutherland on Damages, 716-758.)

Where the elements of fraud, malice, gross negligence or oppression mingle in the controversy, exemplary damages may be allowed. (Livingston v. Burroughs, 33 Mich., 511-13; Welch v. Ware, 32 id., 77; Rayner v. Nims, 37 id., 34; Elliot v. Van Buren, 33 id., 49; Friend v. Dunk, 37 id., 25; Evening News Ass'n v. Tyron, 42 id., 549; Fay v. Swan, 44 id., 544; Johnston v. Disbrow, 47 id., 59; Briggs v. Milburn, 40 id., 512; Ross v. Leggett, 61 id., 445; Hendrickson v. Kingsbury, 21 Ia., 379; Brown v. Allen, 35 Ia., 306; Ward v. Ward, 41 Ia., 686; Fitzgerald v. Ry. Co., 50 Ia., 79;

Reddin v. Gates, 52 Ia., 210 (S. C., 2 N. W., 1079) ; Jones v. Marshall, 56 Ia., 739 (S. C., 10 N. W., 264) ; Curl v. R. R. Co., 63 Ia., 417 (S. C., 19 N. W., 308) ; White v. Spangler, 68 Ia., 222 (S. C., 26 N. W., 85) ; Root v. Sturdevant, 70 Ia., 55 (S. C., 29 N. W., 802) ; Hauser v. Griffith, 71 N. W., 223.) If trespass is committed with malice, insult or deliberate oppression, exemplary damages may be allowed. (Anthony v. Gilbert, 4 Blackf., 348; Millison v. Hock, 17 Ind., 227; Guard v. Risk, 11 Ind., 156; Ry. v. Rogers, 28 Ind., 1 ; same, 38 Ind., 116; Meyer v. Bohling, 44 Ind., 238; Moore v. Crose, 43 Ind., 30; Zeigler v. Powell, 54 Ind., 173.)

The following are a few of the many cases of other courts upholding the doctrine of exemplary damages. (Day v. Woodworth (U. S.), 13 How., 362; R. R. v. Hill (Ala.), 8 South., 90-93; Keller v. McDonald, 39 Ark., 387; Lyles v. Perrin, 119 Cal., 264; Dibble v. Morris, 26 Conn., 416; Jones v. Lamon (Ga.), 18 S. E., 423; Parker v. Laurier (Ga.), 8 S. E., 57; McNay v. Stratton, 9 Ill. App., 215; Ry. Co. v. Hogue (Kan.), 31 Pac., 698; Hefley v. Baker, 19 Kan., 9; McHenry Coal Co. v. Snedden (Ky.), 34 S. W., 228; Marin v. Satterfield (La.), 6 So., 551; Webb v. Gilman, 80 Me., 177; Eliason v. Grove (Md.), 36 Atl., 844; Bell v. Morrison, 27 Miss., 68; Hoffman v. No. Pacific, 45 Minn., 53; Beck v. Dowell (Mo.), 20 S. W., 209; Trainer v. Wolf (N. J.), 33 Atl., 1051; Voltz v. Blackmar, 64 N. J., 440-4; Heyner v. Cowden, 27 O. S., 292-6; Johnson v. Allen, 100 N. C., 131; Day v. Holland (Or.), 15 Pac., 855; Long v. Tresler (Pa.), 8 Atl., 620; Ellis v. Am. Academy Music (Pa.), 15 Atl., 494; Groham v. Kirschman (Pa.), 32 Atl., 32; Herrschoff v. Tripp (R. I.), 23 Atl., 104; Samuels v. Richmond, &c., Co. (S. C.), 14 S. E., 943; Cumberland, &c., Co. v. Poston (Tenn.), 30 S. W., 1040; Frank v. Tatum (Tex.), 26 S. W., 900-2; Camp v. Camp (Vt.), 10 Atl., 748; Norfolk, &c., Co. v. Anderson, 90 Va., 1 ; Pickett v. Crook, 20 Wis., 358; U. P. v. Hause, 1 Wyo., 27.)

The evidence of the pecuniary ability and wealth of plaintiffs in error was admissible. (Hayner v. Cowden, 27 O. S.,

292; Coleman v. Allen, 79 Ga., 648; Rea v. Harrington, 58 Vt., 181; Courvoiser v. Raymond (Colo.), 47 Pac., 284-6; Bell v. Morrison, 27 Miss., 68; Whitfield v. Westbrook, 40 Miss., 311; Pullman Co. v. Lawrence (Miss.), 22 So., 53-9; McCarthy v. Niskern, 22 Minn., 90; Peck v. Small (Minn.), 29 N. W., 69; Webb v. Gillman, 80 Me., 177; Goddard v. Grand Trunk, 57 Me., 221; Beck v. Dowell (Mo.), 20 S. W., 209; Harman v. Cundiff, 82 Va., 239; Sloan v. Edwards, 61 Md., 89; Heneky v. Smith, 10 Ore., 353; McBride v. Laughlin (Pa.), 5 Watts, 375; McNamara v. King, 7 Ill., 432; Hosley v. Brooks, 20 Ill., 115; Mullen v. Spangenburg, 112 Ill., 140; Rowe v. Moses (S. Car.), 9 Rich., 423; Bump v. Betts (N. Y.), 23 Wend, 86; Jacobs v. R. R. Co. (Ky.), 10 Bush, 263; Dush v. Fitzhugh, 2 Lea., 307; Johnson v. Allen (N. Car.), 5 S. E., 666; Adcock v. Marsh, 8 Ire., 360; Bennett v. Hyde, 6 Conn., 24; Case v. Marks, 20 Conn., 248; Tel. Co. v. Shaw (Tenn.), 52 S. W., 163; Birchard v. Booth, 4 Wis., 67-75; Barnes v. Martin, 15 Wis., 240-6; Winn v. Peckham, 42 Wis., 493; Spear v. Sweeney, 88 Wis., 545-50.)

Potter, Chief Justice.

This action was instituted in the District Court for Carbon County by Isaac C. Miller, against Cosgriff Brothers, a partnership composed of John B., Thomas A. and James E. Cosgriff. It is an action for damages for an alleged trespass upon certain lands leased by the plaintiff from the Union Pacific Railroad Company, and there was also a prayer for an injunction *pendente lite* restraining a continuance of the trespass, and that at the final hearing the injunction be made permanent. The trespass is alleged to have been committed by sheep, and that with six thousand head of sheep during part of the time, and with them and an additional six thousand head during the remainder of the trespass sued for, the defendants trod down and trampled upon the premises of plaintiff, and grazed off the grass thereon and depastured the same. The trespass is alleged to have occurred during

the first thirteen days of November, 1898. The value of the grass depastured during the first six days is averred to have been more than eight hundred dollars; and afterward the grazing is averred to have resulted to the damage of plaintiff in the sum of $2,000.

Plaintiff alleges in the petition that on September 7, 1898, he duly notified defendants that he had leased and was entitled to the lands in question, and that they were required not to permit their stock to enter thereon; and that, upon being informed of the trespass of defendants occurring from the 1st to the 6th day of November, inclusive, the plaintiff gave them further notice that their sheep were depasturing said lands, and to keep them off of the same; but that defendants refused to remove their sheep or to cease depasturing plaintiff's lands.

It is then alleged in substance that plaintiff is the owner of 15,000 head of sheep, and had preserved the grasses upon said lands for the purpose of grazing his sheep thereon during the winter of 1898-1899; that defendants threatened to depasture the lands of all the grass thereon, and that their depasturing thereof had destroyed a large portion of the value of the lands for grazing during the winter; that the other ranges for sheep in the vicinity of said lands are either leased or occupied by defendants or others engaged in the sheep industry, and that defendants have maliciously and wilfully depastured the lands, and with a desire to injure plaintiff and to cause his sheep to be devoid of sustenance during the winter, whereby they might die and the plaintiff lose large sums of money; "by which said acts of defendants in said mischievous, negligent and malicious manner, the plaintiff has been damaged in the sum of $25,000."

It is further averred that if defendants are permitted to continue trespassing upon and depasturing said lands plaintiff will be irreparably damaged for lack of other range for his sheep, and from the want of sustenance and pasture for his sheep.

Defendants by their answer admit the truth of plaintiff's allegation that the other ranges for sheep in the vicinity of the lands in question were leased and occupied by defendants and others engaged in the sheep industry. Every other allegation of the petition above referred to is denied by the answer. For a second defense, it is alleged in substance that for more than fifteen years prior to the time when plaintiff claims to have obtained an interest in the said lands, defendants, being residents of Carbon County, and engaged in the business of sheep raising in said county, had driven, herded, ranged and fed their herds of sheep upon the open range and public domain in the immediate vicinity of the lands in question; that they were lawfully seized and entitled to the possession of certain tracts of land adjacent to and in the vicinity of the lands claimed by plaintiff, and engaged in raising sheep thereon.

It is then averred as follows: "That the lands claimed by plaintiff in this action are comprised within and are a part of the odd numbered sections of land, according to the United States government survey, within what is known as the twenty-mile limit on each side of the roadbed and track of the Union Pacific railroad; that the even numbered sections, according to said survey within said twenty-mile limit, were at all the times in said petition mentioned, and for more than twenty-one years prior thereto, and ever since have been, and now are, a part of the unoccupied and unappropriated public domain of the United States of America, except as to a few scattered even numbered sections and some minor subdivisions of said sections, which are held and occupied by actual settlers; that for more than twenty-one years prior to the dates and times complained of by plaintiff, and at all said times, and ever since then, the lands within said twenty-mile limit in said county * * * have been and now are wholly unfenced and uninclosed, and neither the lands claimed by plaintiff nor any other of said lands, * * * except those actually settled upon, as aforesaid, have any fences, or other artificial or natural marks whatever, whereby

notice is given of the boundaries or lines of the lands claimed by plaintiff, or of the lines between the even numbered and the odd numbered sections of said lands; and that * * * it has been and is impossible for defendants to distinguish the lands claimed by plaintiff from the alternate even numbered sections of land, within said twenty-mile limit, the same being alike open and uninclosed.

"That for more than twenty-one years continuously next preceding the times complained of by plaintiff the lands described in the petition and all other lands within said twenty-mile limit in said County of Carbon have been an open common, on which flocks and herds of cattle and sheep have been permitted to be driven, herded and also to run at large and to range and graze at will; and during all said time the government of the United States has permitted and still permits residents of the State (formerly Territory) of Wyoming to go upon its unoccupied and unappropriated public domain within said State (formerly Territory) and to drive, herd, range and feed their flocks and herds of cattle and sheep upon the ranges thereof, and to have common of pasture thereon; and defendants allege that to enable these defendants to go with their sheep from their own lands to the ranges upon the public lands within said twenty-mile limit in said county, to obtain food and sustenance for the sheep of defendants from the grasses and herbage thereon, it is absolutely necessary to go upon and over the lands described in plaintiff's petition; and that the location of many of the even numbered sections of land within said twenty-mile limit, in the vicinity of the lands described in said petition, and of those claimed by these defendants, * * * is such that the lands described in said petition are ways of necessity to enable defendants to drive their sheep from the lands of defendants to and upon their ranges on the public lands aforesaid."

We have ventured to quote at such length from the answer, for the reason that the matter quoted will disclose with much clearness the principal issue presented by defendants, and some repetition or explanation may be saved hereafter.

Following the allegations quoted above, the answer avers that the ranges owned by defendants are wholly insufficient to furnish pasture for the sheep belonging to them during the winter then approaching; that the other ranges for sheep in that vicinity are occupied by plaintiff and other owners of sheep; and that if defendants are denied access to the open ranges aforesaid, in common with others, they will be deprived of their right of pasturage upon the public lands, and will suffer great and irreparable injury.

Plaintiff filed a reply, admitting some of the allegations of the second defense set out in the answer, and denying others; and generally denying that any of them constituted a defence to the action. A demurrer to the said defence had been overruled. Among other denials, the reply denies that it has been and is impossible to distinguish the lands of plaintiff from the alternate even numbered sections of land, and alleges that the section and quarter section corners, as surveyed by the government, are marked by stones bearing appropriate marks and designations, whereby all persons may take notice and are compelled to take notice of the boundaries and lines between the various sections. The fact that the lands were unfenced and uninclosed was admitted.

The cause was tried to a jury. A verdict was returned for the plaintiff, fixing the damages at six thousand five hundred dollars. Thereafter defendants filed a motion for a new trial, which was overruled, and they bring the case to this court on error.

The first and principal question in the case arises upon the errors assigned in respect to the giving of certain instructions requested by the plaintiff and the refusal of certain instructions requested by the defendants. The instructions given, thus referred to, are numbered 1, 5, 8, 9, 10 and 13 of those requested by the plaintiff.

The first instruction informed the jury "that force and arms" does not mean actual force or dangerous weapons, but that if the defendants, or their servants, entered upon plaintiff's lands contrary to his expressed will, and if they knew

it was contrary to his expressed will, then the entry would be with "force and arms;" and that it was not necessary that they should have actually broken into any enclosure or through any fence. The fifth instruction was as follows:

"The court instructs the jury that, after having received notice that the lands mentioned in the petition were leased by the plaintiff, it was the duty of the defendants to ascertain where these lands were, and to prevent their sheep from being driven thereon and depasturing the same."

The jury were charged by the eighth instruction "that in this country there is no such thing as a right of common, the government of the United States has permitted and still does permit citizens, owners of stock, to graze their herds upon its unoccupied public domain, but there is no right conferred upon those who do so that the government cannot rescind at any time, and whenever it parts with its title to any of its public domain, it gives the parties who may acquire any such lands the right to enjoy them without any rights reserved to others to graze thereon with their flocks and herds, notwithstanding that, for some time prior, citizens may have grazed their flocks and herds thereon without molestation or refusal on the part of the government."

The ninth instruction stated substantially that it is the duty of all persons to take notice of the stones and marks of the government survey, and that there was no necessity for plaintiff to place any other or different marks, monuments or designations on his lands.

The tenth instruction was as follows:

"The court instructs the jury that if they find from the evidence that the defendants, after receiving the notice or notices from the plaintiff which have been read in evidence, drove or caused to be driven their sheep upon the lands of plaintiff mentioned in the petition with the intention or purpose that the said sheep should be grazed or herded upon the lands mentioned in the petition, and surrounding lands, without regard for the ownership of said lands, and that the defendants had placed an employee or employees of theirs,

or herders in charge of such sheep, who could and was to keep such sheep together in the flock or herd, and who was to have a general control over such sheep, and that such herder or employee did remain with such sheep, and did exercise a general control over them, and was with them on any of the plaintiff's lands named in the petition at the time or times the said sheep were grazing on such lands, or were regularly bedded or kept upon the same with the permission of such herder, and in pursuance of the intention of the defendants to have their sheep grazed and herded indiscriminately on the lands of plaintiff, as well as other lands in that vicinity, then the jury must find for the plaintiff."

In the thirteenth instruction the jury were charged that the fact of the trespass was proven, and that there was no denial upon the part of the defendants that such trespass occurred, so that, in any event, they were to find for the plaintiff. The remainder of that instruction refers to the matter of damages.

The court gave to the jury some instructions requested by defendant, bearing upon the question of the trespass, and as illustrative of the view taken of the law by the trial court, we will briefly mention the main points involved in those given before passing to those whose rejection is complained of. The jury were thus told that it was admitted by the pleadings that the even numbered sections adjoining the odd numbered sections described in the petition were uninclosed and unoccupied government land, and for more than twenty-one years the government had permitted live stock owners to graze their flocks and herds thereon in common; that it is a rule of law, grown out of a custom long standing, that the unenclosed public lands, on which the native grasses are adapted to the growth and fattening of domestic animals, shall be free to the people who seek to use them for said purpose, no act of government forbidding the same; that, while it is true there is in this country no such thing as "right of common," or "common of pasturage," yet the government permits owners of stock to graze their herds on the unoccupied public

domain, and all citizens have the right to graze their flocks
and herds thereon in common; that plaintiff, by obtaining
an interest in the odd numbered sections, did not obtain any
greater right to the adjoining even numbered sections than
any other citizen, and that he had no right to use his lands so
as to prevent others from pasturing their stock upon the gov-
ernment sections.

The defendants requested an instruction to the effect that
plaintiff could not recover unless his lands were enclosed by
a lawful fence, or the defendants drove their sheep upon the
lands, knowing them to be the lands of plaintiff. The court
refused to give it, as also the following: That unless the
notice to defendants to keep off the lands contained a de-
scription thereof, either by legal subdivision or by metes
and bounds, so that defendants could find them without dif-
ficulty, and unless the description in the notice was suf-
ficient to enable an ordinarily intelligent person to find the
same; or if it was impossible for such person to ascertain
or distinguish the boundaries as described in the notice, then
defendants were not required to take a surveyor and ascer-
tain the boundaries; but it was plaintiff's duty to so mark
them by fences or enclosures, or other indentifying marks,
as to distinguish the boundaries thereof from boundaries of
the adjoining unoccupied public domain. That plaintiff
could not recover unless his lands were enclosed by a lawful
fence, or the boundaries so marked as to be clearly dis-
tinguished by defendants and their herdsmen; and the court
was requested to state to the jury the statutory requirements
for a lawful fence. That plaintiff could not recover if de-
fendants were ignorant of the actual boundaries of plaintiff's
lands. That, being unfenced and not marked so as to be
distinguished by strangers, the right of plaintiff to the
grasses and herbage on his lands appertains only to such
lands as are in his actual possession and occupancy.

The defendants also requested the court to give to the
jury the following: "The court instructs the jury that the
lands within this State lying uninclosed outside of the cities

and towns, whether belonging to the government or to private individuals, is common pasture ground, and may lawfully be roamed over and pastured upon by the live stock, flocks and herds of all the people of this State, subject only to the right of any such private individual to drive off any such live stock, flocks or herds as may be found roaming or pasturing upon any such uninclosed lands belonging to such private individual, and such owner of live stock, flocks or herds cannot be held liable in damages for any injury done to such uninclosed lands by any such roaming or pasturing upon them."

The court also refused, upon request of defendants, to instruct the jury to the effect that defendants had a right to go upon and across the lands of plaintiffs, if necessary to do so in order to reach the unoccupied public lands; and that if they crossed said lands for that purpose they would not be liable for the pasturage consumed in doing so, if they used reasonable care and diligence in so driving their sheep across the lands of plaintiff.

We have adverted with so much particularity to the instructions given, and the requests refused, not only because the giving of the instructions and refusal of the requests are assigned as error, but also for the reason that they present quite clearly the issue between the parties respecting the legal principles that should govern a determination of the charge of trespass preferred against the defendants.

In the petition fifty-two sections of land, or about that number, were described as either owned or leased by plaintiff, but on the trial the proof of the trespass related to but nineteen sections, all of them being odd numbered sections; the alternate even numbered sections being unoccupied and unappropriated public lands, and including in the neighborhood of twenty sections. The nineteen sections of plaintiff's land involved in the controversy are located in townships 22 and 23 north of range 85 west, four of them being in township 22 and the others in 23. Together, therefore, with the adjoining alternate sections we have a scope of country about

eight miles one way and six miles the other, the odd and even numbered sections alternating like the squares upon a checker board. The land is located in what is known as the twenty-mile limit, within which the odd numbered sections were granted by the government to the Union Pacific Railroad Company.

The notice sent to defendants in September informed them that the plaintiff had recently leased from the railroad company "all the land owned by them along the Platte River, extending north from the ranch of Frank Williams to the twenty-mile limit, and west of the river six miles," and stated that the notice was given so that they could instruct their employees to respect his rights and keep their stock off of said leased land. On the 2d day of November the foreman in charge of plaintiff's sheep, according to his testimony, found three of the herds belonging to defendants on plaintiff's lands, viz., on section 7, in township 22, and they had eaten all the grass therefrom. He told the employees of defendants that they were on plaintiff's land.

Plaintiff's foreman moved the sheep of defendants off the lands of plaintiff on three different days—on the 4th, 5th and 6th of November; but they were driven back, and from the 8th to the 13th of November they grazed over the remainder of the nineteen sections.

On the 3d day of November the said foreman delivered for the plaintiff a written notice to one of the defendants, the notice being directed to the firm, which, after referring to the previous notice, and that his foreman had advised him that they, the defendants, were on his land with sheep, and had refused to remove them, described by section number, giving also the range number, the lands leased by plaintiff, with the additional information that his land commences at Williams' corner and takes in "all the railroad land to the land I purchased last year (purchased land was to twenty-mile line) and runs six miles west to George Ferris' land." Defendants were thereby requested to remove their sheep

at once from the land mentioned, or any other land plaintiff owned.

Notwithstanding the verbal demands of Miller's foreman, and the requests of the written notice, the defendants instructed their herders to occupy the old ranges, although they testify that they gave no particular orders as to the Miller lands. They did not deny upon the trial that their sheep were driven upon the lands of plaintiff, as claimed, and depastured them; but, as we understand the testimony of the defendants, their position was that they did not know what lands belonged to the plaintiff, as they were not fenced, marked or distinguished in any way from the other lands in that vicinity; and that their intention was to continue to graze their sheep as they had done before, until Mr. Miller should show them what lands he claimed by designating them in some other way than by a vague description, as they were unable to distinguish between the odd and even numbered sections. Indeed, Mr. Thomas Cosgriff testified that he said to plaintiff's foreman, on or about the 2d day of November, that "We had no knowledge of the lands which Mr. Miller claimed; that when he would show it to us that these certain lands were his, we would respect his rights. Until then our sheep would continue to graze as they had always been."

The right insisted upon by defendants, as we understand it, was that, as they were free to pasture their sheep upon the even numbered public lands, they were privileged to drive their sheep and graze them indiscriminately upon all the unenclosed lands in that neighborhood, including the lands claimed by plaintiff, unless the boundaries of the latter were marked or designated upon the ground, so as to be readily identified.

Although there seems to have been some claim made that they had a right of way by necessity across plaintiff's lands to the government sections, we think the evidence discloses that there was no more effort on the part of defendants to locate the public lands than there was to ascertain the boun-

daries of the lands leased by Miller; and that the depastur-
ing of the lands of the latter was not the result merely of
driving the sheep over and across them in order to reach and
graze them upon the public domain. The question as to the
right of defendants, therefore, to have used Miller's lands
solely as a means of getting to public lands, cannot reason-
ably be said to be in the case.

On the trial the defendant testified that the corner stones
of the government survey were not discoverable, except with
much difficulty, and then in only a few instances. After the
commencement of this suit both parties independently em-
ployed surveyors to make a survey of the territory over
which the dispute arose. The Cosgriff survey was begun
about December 12, nearly a month after the suit had been
instituted. Mr. Thomas Cosgriff testified that their survey
was made to determine which was government land, and to
also determine the lands which Miller said he had leased, so
that they might graze the government lands and keep off
those claimed by Miller.

The surveyors employed respectively by plaintiff and de-
fendants were examined as witnesses to show on the one side
that the corner stones were all, or nearly all, present, and on
the other hand that several of them were either gone or in
bad condition, or only to be discovered after diligent search
by one accustomed to such matters. However, it appears
that no effort was made on the part of defendants in No-
vember to discover the corner monuments, except that one
of them testifies that they endeavored to secure the services
of a surveyor to make a survey of the ground, but were un-
able to obtain one at that time.

The plaintiff did not set up any distinguishing marks to
identify or indicate the corners or boundaries of his lands,
and it seems that not until a survey was subsequently made
for him did his foreman know the number of the section
upon which he found the sheep of defendants on the 2d of
November.

We think the conclusion to be legitimately drawn from the testimony is that the defendants, at least as early as the 2d of November, knew, as did Miller and his foreman, in a general way, the vicinity wherein were located the lands leased by Miller.  Although neither party would have known without an examination of the stones marking the government survey, which were government and which were Miller's lands, yet they knew that within the scope of country where the sheep were being grazed during the fore part of November the odd numbered sections were those claimed by Miller. Their lack of knowledge pertained simply to the matter of the identification of the odd and even numbered sections.

Upon these facts it is maintained on behalf of defendants, who are plaintiffs in error here, that no trespass was committed by them.  Counsel insists that "there is no trespass in driving and grazing sheep upon the uninclosed lands of another, and especially where there are no means of distinguishing them from other adjacent and unfenced and unoccupied government lands."  The argument is that the common law rule that one must restrain his cattle does not prevail in this State; that the fence and brand laws are inconsistent with such a rule, and it is said that it being unlawful to fence or use private lands so as to prevent others from having access to government lands interspersed therewith, the public have a right of way over such private lands. It is also contended that there was no intent on the part of defendants to trespass upon the lands of the plaintiff; but that they desired and proposed only to graze the public lands, and could not know, and did not know, that they were on private lands, there being nothing to distinguish them.  We have already indicated our idea somewhat as to the effect of the evidence upon this matter of knowledge and intent.  It might be conceded that defendants had no specific intent to enter upon and depasture Miller's lands; but we are of the opinion that it must be taken as one of the established facts in the case that, as the boundaries of Miller's lands were not marked, and they were not enclosed, in order that they

might obtain the benefit of the grasses on the public domain, the defendants assumed the right, under the circumstances, to graze and depasture all the lands indiscriminately, and that they did so, it being considered by them that it was not their duty to ascertain which were and which were not government lands.

Counsel for plaintiff below, defendant in error here, admit that the common law rule is inapplicable to our conditions and does not prevail here. They, however, maintain that the right to recover is not based upon the common law rule, but depends upon a different principle. While it is conceded that one is not liable for trespass committed if his cattle running at large stray upon unfenced premises, it is contended that where cattle or sheep are driven intentionally and persistently upon the unenclosed lands of another, against his will, a trespass occurs, for which he may recover.

In this Western country, where the native grasses are adapted to the growth and fattening of domestic animals, it is a firmly settled rule of law that no trespass is committed when animals lawfully running at large wander upon and depasture the unenclosed lands of a private owner. That principle was alluded to in State v. Johnson, 7 Wyo., 512, and Hecht v. Harrison, 5 Wyo., 279.

The rule, however, does not go to the extent of permitting the owner of cattle or sheep to willfully and knowingly drive them upon the premises of another, although unenclosed; and there is nothing in our statute relating to fences conferring such a privilege, or rendering unenclosed lands of a private owner, in opposition to his will, common pasture ground for the public. It is generally held that one has no right to *drive* his animals upon such ground against the consent and expressed will of the owner.

In Delaney v. Errickson, 11 Neb., 533, it was said: "We know of no law requiring as a condition to one's right to the exclusive enjoyment of his own estate as against the willful, injurious acts of others, that he shall keep it enclosed by a

fence." (See also Powers v. Kindt, 13 Kan., 74; Willard v. Mathesus, 7 Colo., 76; Monroe v. Cannon, 24 Mont., 316; 61 Pac., 863; Lazarus v. Phelps, 152 U. S., 81; Harrison v. Adamson, 76 Ia., 337.)

In the case last above cited the court said: "There is nothing to be found in the statutes in this State, or the decisions of this court, depriving the owner of unenclosed land of the profits of the grass and pasture thereon, and exempting one who, against his consent, appropriates the grass or. pasture from liability to the owner. The laws of the State provide that trespass is not committed when cattle which are running at large enter upon unenclosed land. But it is quite a different thing when cattle not running at large, but in the charge and under the control of a herdsman, the employee and agent of their owner are driven and kept upon unenclosed land against the will of the land owner, and with full knowledge of the owner of the cattle. In that case the trespasser takes and appropriates the use of the land for pasture, and is held by the law liable therefor."

In Monroe v. Cannon, *supra,* about ten sections of land were enclosed by fence. Some of the land belonged to the parties who had constructed the fence, and a portion was a part of the public domain. One hundred and twenty acres was owned by another party, the plaintiff, who had irrigated it and was raising hay thereon. Plaintiff's land was not separately enclosed, but its boundaries were marked by post holes, by ditches, and by stakes placed at intervals along the exterior limits of the land. The parties who had built the fence, and owned some of the land in the enclosure, had a herd of sheep therein, and at their instance, and against plaintiff's protests, the sheep were driven upon and depastured plaintiff's small tract, and the grass thereon was eaten up and destroyed. The suit was brought to recover for the pasturage. Plaintiff's right to recover was upheld, as against the contention that no recovery could be had by reason of the absence of a lawful fence enclosing the premises depastured.

The case of Lazarus v. Phelps, *supra,* presented the following state of facts: One hundred and sixty-eight thousand three hundred acres of land in Texas belonging to Phelps were enclosed, together with 162,270 acres, located in school sections, in one continuous tract of land. The school sections and those owned by Phelps alternated. Lazarus secured a lease of the school sections from the State. His own stock was pastured in the enclosure, and, in addition thereto, he contracted to and did pasture therein some 6,500 head of cattle for other persons. The stock was not confined to his own land, but grazed upon the land of Phelps as well; and the evidence was undisputed that the entire tract was overstocked. In no other way did Lazarus prevent Phelps from taking possession of his lands or from grazing stock thereon. Phelps brought suit to recover the rental value of his lands, and secured a verdict awarding him $8,417. The judgment thereon rendered in the Circuit Court of the United States for the Northern District of Texas was affirmed by the Supreme Court.

In commenting upon the general rule prevailing in the newer states of the West, as well as in Texas, to the effect that the entry of animals at large upon unenclosed lands does not amount to an actionable trespass, the court by Mr. Justice Brown said:

"It could never have been intended, however, to authorize cattle owners deliberately to take possession of such lands and depasture their cattle upon them without making compensation, particularly if this were done against the will of the owner, or under such circumstances as to show a deliberate intent to obtain the benefit of another's pasturage. In other words, the trespass authorized, or rather condoned, was an accidental trespass caused by straying cattle." It was held that the acts of defendant exhibited an intent on his part to avail himself of the pasturage of the lands of the plaintiff; and an instruction was upheld to the effect that if defendant had overstocked the enclosure he should be held liable for the rental value of the lands, evidently upon the

theory that by overstocking the land the owner of the cattle must have known that they would graze the tracts belonging to plaintiff, and intended that they should do so. In that case, it is to be observed, there was no separation of the lands of plaintiff from the school sections, nor does it appear that they were even designated or identified upon the ground by marks of any description.

Upon reason and authority, we are of the opinion that if one, knowing unenclosed lands to be the property of another, deliberately and intentionally drives his stock thereon, and depastures the same, over the protests or against the expressed will or consent of the land owner, the one so acting is guilty of an actionable trespass, and is liable in damages for the injury done. In the case at bar the claim is made that defendants did not know the Miller lands; but the fact is that they knew the tract grazed over was divided into alternate odd and even numbered sections, and that Miller had leased and claimed all the odd numbered sections. The only basis for their claim of ignorance as to the lands of plaintiff is their inability to identify them, or distinguish them from the even numbered sections by any artificial markings. There might have been some force in this contention of defendants, had they put forth any reasonable effort to ascertain the location of the public lands, and honestly and prudently endeavored to confine their sheep to such lands. Had they done that, it is quite possible that they might have avoided liability for any accidental depasturing of a portion of plaintiff's lands caused by the absence of anything to indicate the lines between the alternating sections; had they believed at the time that they were upon government land, with no intention whatever to invade the premises of the plaintiff.

But the defendants were not endeavoring to confine their sheep to government land. The sheep were driven and grazed upon all the lands, private and public, indiscriminately, without the slightest steps being taken at the time to determine which were the government sections; and, in

fact, all of the nineteen sections of Miller in the tract described were depastured. We are unable to avoid the conclusion that the facts disclosed an intention to occupy and depasture all the lands in the tract involved in the testimony, including the lands of plaintiff.

It is true that defendants, in common with others, were privileged to graze their herds upon the grasses growing upon the alternating public sections. But that privilege was no greater, to say the least, than would have been their right to enjoy the even numbered sections, had they owned them. It can hardly be contended that, had defendants owned the even numbered sections, they could have deliberately depastured the odd numbered sections, because the owner thereof did not enclose them or mark their boundary lines in some manner. In such case, upon what principle could it be held that the duty of marking the boundary lines devolve upon the owner of the odd numbered rather than upon the owner of the even numbered sections?

We are not aware of any law that would have made it the duty of either party to have enclosed their lands or to have indicated the boundaries by marks of any description upon the ground. Nor are we aware of any law that, had either party failed to have enclosed his lands or marked the boundaries, would permit the other to intentionally and knowingly invade his premises and destroy the crops or grasses growing thereon.

Where there are no natural or artificial means of identifying the lines between various tracts, no doubt one would be held blameless if, in the absence of negligence or want of proper precaution, his stock should be driven upon the land of another without his knowledge, and in the pursuit of an honest endeavor to keep them upon his own premises, or ground upon which he has a right to keep them. We perceive no error, therefore, in the giving of the instructions complained of on this question, nor in the refusal of those requested by defendants.

The remaining questions relate to the matter of damages.

At the request of the plaintiff, the court gave three instructions, numbered respectively eleven, twelve and thirteen, respecting the damages that might be awarded, should the jury find for the plaintiff.

In substance, they instructed the jury that they should assess the damages they found plaintiff incurred by reason of the trespass from the evidence, and that the amount of actual damages should be such as are supported by the evidence; and that, in addition to actual damages, exemplary damages might be awarded, in case, as stated in the eleventh instruction, they should find the trespass to have been committed in a wanton, willful and reckless manner, or, as stated in the twelfth instruction, in case they find such trespass to have been committed wantonly, recklessly and without due regard for the rights of plaintiff, or, as stated in the thirteenth instruction, if they should find that the trespass was from any bad motive, or so recklessly as to imply a disregard of society obligations or the rights of plaintiff. The purpose of the exemplary damages was stated to be the punishment of defendants, and a warning or example to others to defer them from similar wrongs. As to the amount of such exemplary damages, the jury were instructed that it might be such as, in the discretion of the jury, they should deem just and proper under the circumstances, and sufficient, considering the financial ability of defendants, to justly punish them and serve as a warning to others.

At the request of defendants, the jury were instructed that if they should find that defendants trespassed upon the lands of plaintiff in the assertion of a supposed right and without wrong intention, and without such recklessness as to show malice or conscious disregard for the rights of others, then they would not be justified in giving punitive or exemplary damages. Also, that to authorize exemplary damages, the jury must find that defendants trespassed upon the land of plaintiff, and that he was damaged thereby, and, further, that the trespass was done wantonly, wilfully, maliciously or with intent to injure plaintiff's property, or deprive him of

its use.  Also, that if the trespass was without wrong intention, but in the belief that they had a right to go upon the lands with their sheep, and that the acts were done without malice or willful intention to injure the plaintiff, then the jury should assess only such damages as they should · find from the evidence to have been actually sustained prior to the bringing of the suit.  Also, that exemplary damages cannot be given, except in extreme cases, where the malicious intention to wilfully injure has been clearly shown, and that, unless the same has been proven, to the satisfaction of the jury by a preponderance of the evidence, no sum whatever as punitive, vindictive or exemplary damages can be awarded.  At request also of defendants, the jury were further instructed that the plaintiff was not entitled to any damage, either as compensation or otherwise, for any trespass other than that alleged in the petition, nor for any trespass occurring since the commencement of the action.

The court, however, refused to instruct the jury as requested by defendants to the effect that any portion of the damages claimed by plaintiff occuring since the commencement of the suit, such as the death or loss of sheep, should be disregarded, and that the damages should be limited to matters and things occurring prior to the institution of the suit.  The court also refused to charge that if plaintiff was entitled to recover at all, the measure of his damage would be such amount as would compensate him for the damage actually sustained by reason of defendants' acts, which occurred prior to the commencement of the suit.  This instruction, as will be observed, positively eliminated the question of exemplary damages.

With respect to damages purely compensatory, the instructions were confined to informing the jury that the amount should be such as was shown by the evidence to have been actually sustained.

Neither party requested a more definite statement.  The defendants not only did not request an instruction stating more definitely the legal measure of compensatory damages,

but they are not now complaining of the absence of such an instruction. They did not by any instruction present the question of the right of the jury to consider any of the evidence as to the loss or amount of damages, except in so far as the damage or loss claimed might have occurred subsequent to the commencement of the suit; such, for instance, as the loss of sheep, which was specifically referred to in one instruction refused, in connection with the statement that anything occurring after suit brought should be disregarded. But, by no instruction, did defendants ask to have the jury informed that the loss of sheep, or any other item of damage testified to, could not be considered, because too remote, or for any other reason, except that it might have occurred after the suit had been commenced.

The instructions as to actual damages sustained must have referred to and covered the items of loss or expense, which had been admitted in evidence, so far as the jury should find them to be supported by the evidence in the case. The jury must have so understood the instructions. It is now contended on behalf of plaintiffs in error that none of the proof as to damage was proper; that all the damages shown by the evidence were of the character known as special, and were not recoverable, for the reason, as contended, that no allegation thereof or claim therefor was contained in the petition, and, further, as to a portion of the damage claimed, that it was too remote.

The defendant in error, Miller, and his foreman, Wagers, were the only witnesses examined upon the subject of damages. The witness Wagers was permitted, without objection, to state the amount of damage suffered by Miller "by reason of Cosgriff's sheep grazing off his sections of land," and he stated the amount to be about nine thousand four hundred dollars. But the items going to make up the amount were shown in detail by the testimony of the two witnesses, and it is not difficult to ascertain how the aggregate sum mentioned by Wagers was arrived at.

The evidence shows that Miller had fifteen thousand head

of sheep, and intended to use the lands in controversy for winter pasturage; and it was an admitted fact in the case that all the other sheep ranges in the vicinity, not owned or controlled by Miller, were either leased by defendants or others, or occupied by others engaged in the sheep industry.

It appears from the testimony that during the winter succeeding the trespass, and on account of such trespass, Miller was obliged to remove two herds of his sheep, comprising about five thousand head, to his ranch to be fed hay, and that they were fed two hundred and twenty-five tons, worth ten dollars per ton; that such feeding was continued for a period of eighty-five to ninety-five days; and required the services of two four-horse teams and two extra teamsters, at an expense of six dollars per day for the teams and fifty dollars per month, inclusive of board, for each extra teamster. The testimony is positive that this expense was required because the nineteen sections in question had been depastured by the Cosgriffs. A rough computation will show that such expense amounted to something in excess of three thousand dollars.

The remaining actual damage, as shown by the evidence, was the loss of fifteen hundred head of Miller's sheep, worth four dollars a head, from the other herds, which were removed to other ranges, evidently at some distance from the lands involved in this action, or at least not in the immediate vicinity thereof. The witnesses claimed that the loss of the sheep was due directly to their lack of feed occasioned by the depasturing of the lands in controversy. The sheep were not removed until they had been pastured upon other lands of Miller, described in the petition, but not embraced in the trespass shown upon the trial.

Upon cross-examination, and also by independent testimony, the defendants sought to show that the loss of the sheep was caused by the unusually severe winter. Upon that question the most that can be said is that the evidence is conflicting respecting the character of the winter in that locality. Some of the witnesses produced by defendant thought that the winter was more severe than the previous one, but Miller

and his foreman did not so consider it. No witness other than plaintiff and his foreman attempted to state the cause of the loss of the sheep. Defendant's witnesses were examined only as to the severity of the winter, and necessity in general for other provision for sheep than the native grasses, and the condition of the Miller lands claimed to have been eaten off by the sheep of defendants. There may be said to be some conflict as to the condition in which the trespass of defendants left the premises of plaintiff. That matter, as well as every other matter of fact as to which the evidence was conflicting, was submitted to the jury; and with their determination thereon this court, of course, could not interfere.

There was no direct evidence as to the value of the grass destroyed through the trespass of defendants, nor any other evidence of the damage suffered thereby by the plaintiff, except that above mentioned. Plaintiff and his foreman, however, testified that the lands trespassed on were good grazing lands, and that the feed growing thereon before the trespass was good.

It is contended in this court that the evidence as to damage related to special damages only, and was not admissible, and cannot be considered, for the reason that the petition did not allege any special damages.

In the first place, it is to be observed that the evidence complained of was all admitted without objection. It is true that when Mr. Miller was being examined an objection was offered on the ground that no trespass had then been shown, and that it was anticipating evidence. The court stated that witness might testify, but if the trespass was not afterwards shown, the testimony might be stricken out. The witness Wagers, by whose testimony the trespass was established, had not at that time been examined. No other objection than that above mentioned was made to any of the evidence upon the subject of Miller's loss or damage. Nor was any motion offered to have the testimony stricken out or taken from the consideration of the jury, nor any instruction upon the point of its competency or materiality requested. On

the contrary, during the trial defendants sought to overcome its effect by producing evidence tending to show that the losses and expense testified to resulted from causes independent of the trespass.

It is no doubt the general rule that to be proven special damages must be alleged; but when evidence showing such damages has been admitted without objection, a complaint on the ground that the allegations of the petition are insufficient to cover special damages comes too late after verdict. Indeed, it is held that proof of special damage, if not objected to when offered, cannot be ruled from the jury by an instruction, after the evidence is closed, and furnishes no ground for a new trial. See Lashus v. Chamberlain, 6 Utah, 385; 24 Pac., 188, where the principle is fully discussed and the authorities reviewed. (Plunkett v. Ry. Co., 79 Wis., 222.)

Moreover, it is not clear that sufficient foundation for the proof of such damages, at least as to the expense of feeding hay, is not laid in the petition. It is averred that the plaintiff is the owner of more than fifteen thousand head of sheep, and that he had preserved the grasses upon said lands for the purpose of grazing said sheep thereon "during the coming winter season, to-wit, from now until May, A. D. 1899, in order that said sheep might have the sustenance and nourishment during the winter months," and "that the depasturing of the said lands all grazed over by defendants' sheep have destroyed a large portion of the value of said lands for grazing during the coming winter; that the other ranges for sheep in the vicinity of the said lands of plaintiff are either leased by defendants or others, or occupied by others engaged in the sheep industry." Then follows in the same paragraph an averment that the trespass was willful and malicious, and with the desire to cause plaintiff's sheep to be devoid of sustenance during the winter, whereby they might die, "by which said acts of defendants in said mischievous, negligent and malicious manner the said plaintiff has been damaged in the sum of $25,000." It

should be stated, perhaps, that plaintiff's lease for the lands ran from May 1, 1898, until May 1, 1899; hence, by the trespass under his claim that the grass was entirely depastured, he was practically deprived of all benefit of his lease.

It was held in Plunkett v. Ry. Co., *supra,* that if the allegation as to special damages was uncertain or indefinite, the objection should have been made by a motion to make more definite and certain. We think it unnecessary to hold positively the allegation in this case to have been sufficient in the face of a timely objection, had one been offered. It is clearly sufficient, under the circumstances, the evidence having gone in without objection.

There is another view which might be taken of the testimony with respect at least to the expense of feeding hay to the sheep at plaintiff's ranch. We are inclined to the opinion that it was admissible as evidence of the value of the pasture destroyed, and the damage to plaintiff's possession, under the general allegation of damage, as a consequence of the admitted fact that there were no other available sheep ranges in the vicinity. There being none, it would hardly have been possible to show the damage in any other way. If there were no other ranges in the vicinity, then other pasture lands there could not have been obtained, and the pasturage, or the growing grass, could not be said to have had a market value. The usual method of establishing value or damage would have been inapplicable. (Gilbert v. Kennedy, 22 Mich., 117.) In that case Mr. Justice Christiancy, delivering the opinion of the court, said in a somewhat analogous case: "There can be no rule of law founded upon any just or intelligible principle which, in actions of trespass at least, requires any higher degree of certainty in the evidence upon which the damages are to be estimated than in reference to any other branch of the case. Juries in such cases have as much right, and it is as clearly their duty to draw reasonable and proper inferences from the facts and circumstances in evidence, in reference to the

amount of damages, as in reference to any other subject of inquiry in the case. And in those cases of trespass, or those features of a particular case, where, from the nature of the case, adequate damages cannot be measured with certainty by a fixed rule, all the facts and circumstances tending to show such damages as are claimed in the declaration, or their probable amount, should be submitted to the jury to enable them to form, under proper instructions from the court, such reasonable and probable estimate as in the exercise of good sense and sound judgment they shall think will produce adequate compensation. There is no sound reason in such a case, as there may be, to some extent, in actions upon contract, for throwing *any part* of the loss upon the injured party, which the jury believe from the evidence he has sustained; though the precise amount cannot be ascertained by a fixed rule, but must be matter of opinion and probable estimate. And the adoption of any arbitrary rule in such a case, which will relieve the wrong-doer from any part of the damages and throw the loss upon the injured party, would be little less than legalized robbery."

The evidence of plaintiff, together with the fact that the other ranges in the vicinity were occupied, rendered it clear, if accepted by the jury, that the expense of feeding hay was the direct result of the trespass; and such expense was admissible, we think, under the general allegations of actual damage, caused by grazing the grass off of the plaintiff's pasture ground.

It is insisted, however, that plaintiff cannot recover for any item of damage occurring after the commencement of the suit.

The rule on that subject is thus stated by Sutherland: "It is not essential, however, that all the injurious effects of the act, which constitutes the cause of action, should have been developed and suffered before suit; it is immaterial to the right to recover for them, where the effects manifest themselves, with reference to the time of bringing the suit. But it is practically material to the plaintiff that the effects

be so manifest, before and at the time of the trial, as to be susceptible of proof. The actual effects down to the time of the trial are provable; and, whether those which may ensue later may be taken into account, will depend on whether they are imminent and sufficiently certain. Whether continuing damages may be computed, after the commencement of the suit, will depend on whether they proceed from the act complained of in that suit as the cause of action, or whether they proceed from some later act constituting a fresh cause of action." (1 Suth. on Dam., 187, 194; Hayden v. Albee, 20 Minn., 159; Fliler v. N. Y. Cent. R. R. Co., 49 N. Y., 42; Spear v. Tracy, 26 Vt., 61; Schlitz Brew. Co. v. Compton, 18 L. R. A., 390 (Ill.); Miller v. Wilson, 24 Pa. St., 114.)

The evidence admitted to prove the damages plaintiff had sustained had reference to those injuries suffered on account of the trespass alleged in the petition. The damages claimed to have ensued proceeded, according to the evidence of plaintiff, directly from the acts constituting the cause of action sued on.

We do not regard it as necessary to the disposition of this cause that we decide whether the damage by loss of sheep was too remote or not. That matter not only went to the jury without objection on that ground, but for other reasons it is immaterial to a conclusion upon the whole case. It is impossible to say whether the jury included the loss of sheep or not in their verdict. They awarded damages in the sum of $6,500. Had they allowed the plaintiff all the actual damages shown by the testimony of his foreman and himself, inclusive of the damage occasioned by the death of fifteen hundred head of sheep, the verdict would have approximated the sum of $9,000. Assuming that exemplary damages were proper, and those probably allowed not excessive, it will be seen that error, if any, in regard to the sheep loss, could not be held to have been prejudicial.

But the right to recover exemplary damages is challenged. This court is urged to adopt the principle that the allowance of exemplary or punitive damages is wrong in any case.

There are a few states where such a principle is maintained; but by the great weight of authority the doct:ine of exemplary damages in proper cases is strongly upheld. The general rule where the doctrine is recognized is, that where malice, fraud or gross negligence or recklessness enters into the commission of a tort, or where the act is done wantonly, exemplary damages are recoverable. (12 Ency. L. (2nd Ed.), 13, and cases cited.) Sutherland, in his work on Damages, states that the doctrine that exemplary damages in all actions for torts may be allowed for the purpose of example and punishment, in addition to the compensation, is held in nearly all the states of the Union and in England, and the author cites a large number of cases. (1 Suth. Dam., 721, 722.) He states the rule in various ways, but the act to authorize the infliction of such damages must, under any statement of the rule, have been done wantonly, recklessly or maliciously. "Whenever a case shows a wanton invasion of the plaintiff's rights, or any circumstances of outrage or insult; whenever there has been oppression or vindictiveness on the part of the wrong-doer; whenever there is a willful, malicious or reckless tort to person or property." (1 Suth. on Dam., 716.) "If a wrong is done wilfully, that is, if a tort is committed deliberately, recklessly or by willful negligence, with a present consciousness of invading another's right, or of exposing him to injury, an undoubted case is presented for exemplary damages." (Id., 724.)

Although in some states the courts only allow such damages for those acts which are not criminal offenses, the more general rule is that the liability to criminal punishment does not affect the civil remedy, or the question of punitive damages. (12 Ency. L. (2nd Ed.), 11.; 1 Suth. on Dam., 738.)

We think, if it be material here, whether the act was a criminal offense or not, which is questionable, that the general rule is the one best sustained by reason, as well as supported by authority. Where the act is punishable criminally the judgment for the act as an offense against the criminal laws is for the wrong done the public, while the damages

awarded in a civil action, although punitive and inflicted by
way of example and punishment, is for the offense com-
mitted wantonly or maliciously against an individual suf-
ferer.  As was said in one case, "the liability to both crim-
inal punishment and to such damages as a jury may impose
in a civil suit is the consequence of any act that is criminal,
and also creates a civil liability."  (Hoadley v. Watson, 45
Vt., 289; 12 Am. R., 197.)  Exemplary damages in a civil
action are not awarded in *lieu* of punishment.  They are
spoken of as awarded by way of example or punishment,
for the reason, it seems to me, that they are based wholly
upon the wantonness, maliciousness or recklessness of the
act, and are not given as a substitute for compensatory dam-
ages; and are allowed in favor of a private suitor, because
he has been the victim of the wanton, malicious or reckless
act.

We entertain the opinion that the doctrine of exemplary
damages is not only thoroughly engrafted upon the juris-
prudence of this country, but that it is a salutary one, and
we are not prepared to hold that it should not be allowed in
proper cases in this State.  Although the question has not,
perhaps, been heretofore squarely decided in this court, we
believe the principle has been usually recognized in the Dis-
trict Courts of the State, and at an early date the Supreme
Court of the Territory expressed a recognition of the rule
in cases of personal injuries, committed through wanton-
ness, or even gross carelessness, but it was said that there
should be clear and unmistakable evidence of an intention
to do the personal injury before the jury would be justified
in finding an amount greatly beyond the actual loss sus-
tained by the person injured.  (Union Pacific R. R. Co. v.
Hause, 1 Wyo., 27.)

We think the evidence justified the giving of instructions
relative to exemplary damages.  According to the testimony
of Wagers, after he had driven the sheep off of the prem-
ises of plaintiff several times, they were in each instance
driven back; and then defendants "put out armed men,"
and their employees told Wagers they had instructions to

kill everybody bothering the sheep, whether on Miller's land or the land of anyone else.

At the time of giving the second notice to the defendants, one of them said to Wagers that Miller had the law, and their sheep were down there and could not be moved. It is explained by the one making that remark that what was intended thereby was that Miller could resort to law. Wagers also testified that, at the same time, one of the defendants said they would take their sheep to feed "wherever it may be."

Mr. Thomas Cosgriff admitted by his testimony that they had sent armed men into the territory in question, and explained the matter by saying they had sent herders and always furnished them with guns, if they had none of their own, for their own protection, and "the protection of the herds against the depredations of wolves in any form."

It has already been shown that defendants, notwithstanding the notices from Miller, insisted upon grazing their sheep on all unenclosed lands. This is not a case where defendants claimed any ownership in the lands leased by Miller. Had they done so in good faith, upon some reasonable foundation, a different question would have been presented. The right they claim, and doubtless it was claimed in good faith, was to depasture not their own premises, but those of another. That sort of claim, although preferred in good faith, under a mistaken notion of the law, cannot be regarded as a claim of right sufficient to absolve a trespasser from liability to exemplary damages, where the case otherwise is such as to warrant their infliction.

It is impossible for us to know what portion of the damages, if any, was based upon the evidence as to loss of sheep. The expense of feeding hay approximated three thousand dollars, and the remainder of the amount of the verdict, viz., thirty-five hundred dollars, is not enough to cover the value of the sheep claimed to have died in consequence of the trespass. Some or all of that amount may have been assessed by way of exemplary damages; and if so, we are not prepared to hold it to be excessive.

It is not apparent, therefore, how the question now raised as to the remoteness of the loss of sheep as an item of damage becomes material on this appeal. The trial court did not rule upon the matter, and was not requested to do so. The evidence went in without objection, and no suggestion seems to have been made on the trial that it was not competent or entitled to consideration.

We do not think the court erred in its instruction, or its refusal to instruct as requested in relation to damages. Neither do we think that error was committed in the admission of testimony respecting the financial condition of the defendants. Over their objection one of the defendants, called as a witness by plaintiff, was required to answer a general question concerning the aggregate wealth of the defendant firm and its individual members. He stated that he guessed it to be two or three hundred thousand, and that it might perhaps be three hundred thousand.

In cases of tort where exemplary damages are claimed, it is proper to inquire into the pecuniary condition and circumstances of the defendant; the ground upon which such testimony is held admissible being that a given sum would be a much greater punishment to a man of small means than to one possessing larger wealth. (1 Suth. on Dam., 744, 745; Webb v. Gilman, 80 Me., 177; Dailey v. Houston, 58 Mo., 361; Hayes v. R. R. Co., 15 Mo. App., 583; Belknap v. Boston & M. R. Co., 49 N. H., 358; Hayner v. Cowden, 27 O. St., 144; McCarthy v. Niskern, 22 Minn., 90; Mullen v. Spangenburg, 112 Ill., 140; Spear v. Sweeney, 88 Wis., 545.)

We cannot substitute our judgment for that of the jury as to the amount of damages. In view of all the evidence, we perceive no sound reason for holding the assessment of damages excessive, so as to require a vacation of the verdict on that ground.

We are constrained to hold that there is no error in the record, and, therefore, the judgment must be affirmed.

*Affirmed.*

Corn, J., and Knight, J., concur.