## HEALY ET AL. v. SMITH ET AL.

EQUITY JURISDICTION—INJUNCTION—MORAL OBLIGATIONS—ANIMALS
—GRAZING UPON PUBLIC LANDS—TRESPASS—INJUNCTION—UNIN-
CLOSED LANDS—SUFFICIENCY OF EVIDENCE TO ENJOIN TRESPASS
UPON PRIVATE UNENCLOSED LANDS—PARTIES—MISJOINDER.

1. Equity will not lend the aid of its injunctive power to enforce mere moral obligations.

2. Injunction will not lie at the suit of one stockgrower to restrain another from grazing or pasturing his live stock upon the public domain.

3. Though an actionable trespass is not committed by cattle lawfully running at large wandering upon and depasturing uninclosed lands of a private owner, the owner of cattle or other live stock has no right to wilfully and knowingly drive them upon the premises of another, though uninclosed, against the consent of the owner of such premises.

4. Under an implied license of the government, growing out of its long acquiescence in the use by the public of the pasturage upon the public lands, such lands have been and are free to everyone who may seek to use them for grazing or pasturing live stock, so long as they are unappropriated and not expressly reserved or set apart for other public purposes.

5. The government has never recognized the right or claim of any person, or a limited number of persons, to the exclusive use of the unappropriated and open public lands for grazing or other purposes, on account of prior occupation or otherwise.

6. One cannot be held to have usurped the exclusive use or possession of any part of the public domain, in the sense in which exclusive use or possession of the public domain is declared or held unlawful or opposed to public policy, by merely grazing a herd or herds of sheep thereon, in the charge of a herder or herders.

7. In the absence of statute or other governmental regulation, there is no authority for confining the privilege of grazing on the public lands to animals running at large, and denying that privilege to sheep under the control of herders.

8. The fact that certain persons have used in common for a period of years a part of the open public domain as a range for their cattle and horses will not entitle them to

an injunction restraining other owners of cattle or owners of sheep from also using the said public domain for grazing purposes.

9.  The fact that in an open territory embracing about 20 townships, and containing a few scattering and widely separated tracts of private uninclosed lands, nearly all the available watering facilities are located upon such private lands does not entitle the owners of the private lands to enjoin sheep or other livestock owners from grazing or pasturing their live stock upon the public lands within such territory.

10.  Though equity will not enjoin an owner of domestic animals, which are running at large in a lawful manner, from allowing them to trespass upon or depasture uninclosed premises, injunction will lie, where the other necessary elements of equity jurisdiction are present, to restrain a live stock owner from wilfully and knowingly driving or turning his live stock upon the unenclosed premises of a private owner.

11.  To authorize an injunction restraining a live stock owner from knowingly and wilfully driving or turning his stock upon the uninclosed premises of a private owner, it must appear that there is reasonable probability of the commission of the wrongful act and a well grounded apprehension of resulting injury.

12.  The mere fact that the plaintiff owns a tract of unenclosed land, and that defendant owns a herd or herds of sheep, which he proposes to graze upon the public lands in the same locality will not justify an injunction to restrain defendant from driving his sheep upon plaintiff's land.

13.  In a suit to enjoin defendants from trespassing with sheep upon an uninclosed range consisting of about 20 townships, and composed mostly of public lands, but containing scattering tracts of private uninclosed lands belonging respectively to one or other of the plaintiffs, the plaintiffs were separately, not jointly, owners of cattle and horses which usually grazed upon the range in question; defendants were owners of several herds of sheep and, in a previous year, had grazed them upon some of the public lands on said range, without, so far as shown, trespassing upon any of the private lands; and shortly prior to the commencement of the suit had declared an intention of going upon the range aforesaid with their sheep, as soon as snow fell, for grazing purposes. Nearly all the available watering facilities within said range were situated upon the private lands, upon which signs had been posted

warning against trespasses thereon. One of the defendants testified that he knew the location of the private lands, and had instructed their employees not to go upon the same. No particular threat by defendants to graze or go upon the private lands was shown, but, after the issuance of a temporary injunction restraining the defendants from driving or grazing their sheep upon any of the lands in the territory aforesaid, public as well as private, the defendants drove their herds of sheep upon a part of said range and grazed them there for about six weeks, and, as appeared by the evidence, entered upon not more than two of the several private tracts, many of which were not located within the territory grazed over by the defendants. The defendants then left the range and presumably did not return. It did not appear that more than a single act of trespass was committed upon either of the two private tracts, though such trespass may have continued several days. Three of the plaintiffs did not own any land upon said range, and none of the tracts were owned by the plaintiffs jointly. The various individual plaintiffs allowed their cattle and horses to run at large upon and over the said range, and they were usually rounded up together, and the respective owners of the private lands permitted the stock of the other plaintiffs to graze and water at will upon their uninclosed premises. *Held,*

    (a) That, upon the basis of threats, the evidence was insufficient to justify an injunction restraining defendants from trespassing upon the private lands.

    (b) That the single act of trespass upon but two of the private tracts without any threat of continuance, or any showing of permanent injury was not a sufficient ground for an injunction perpetually restraining the defendants from trespassing upon all the private lands of the various plaintiffs in the territory aforesaid.

    (c) That the evidence did not warrant an injunction restraining defendants from allowing cattle owned by them and running at large upon said range to trespass upon the private lands.

    (d) That the facts were not sufficient to show a joint possession by all the plaintiffs of the private lands, that the mere fact that a landowner allows his premises to remain open and accessible to cattle roaming at large, without objection on his

part to the grazing thereon of his neighbor's cat-
tle, or with his tacit acquiescence therein, does
not in legal effect place the owners of the roving
cattle in joint possession with him of his prem-
ises.

(e) That the plaintiffs were not entitled to enjoin de-
fendants from grazing their sheep upon the pub-
lic lands, and as to the private lands there was a
misjoinder of plaintiffs.

[Decided January 6, 1906.]          (83 Pac. 583.)

ERROR to the District Court, Sheridan County, HON.
JOSEPH L. STOTTS, Judge.

This was an action to enjoin defendants from going
with their sheep upon a range claimed by the plaintiffs
as a cattle and horse range, and embracing a large body of
public lands, and some scattering tracts of private lands,
all unenclosed. The facts are stated in the opinion.

*Lonabaugh & Wenzell,* for plaintiffs in error.

There was a misjoinder of parties plaintiff, and the de-
murrer should have been sustained on that ground. This
is an action to prevent trespass upon real estate, and the
test as to whether there is a proper joinder of parties or
not is whether or not any one of the plaintiffs could main-
tain a separate action against any of the defendants for
trespass, or for an injunction to prevent trespass. (Gilland
v. Ry. Co., 6 Wyo., 195; Bliss on Code Pl., Secs. 62, 123;
Rev. Stat. 1899, Sec. 3479.) The plaintiffs who do not con-
nect themselves with the title to the real estate involved
cannot be said to have an interest in the action, especially
as they are not even in possession. (Utterback v. Meeker
(Wash.), 47 Pac., 428; Land Co. v. Elec. Ry. & L. Co.,
83 N. W., 851; Winslow v. Smith (Mich.), 30 N. W.,
905; Armstrong v. Treasurer, &c., 10 O., 235; State v.
Ellis, id., 456; Jeffers v. Forbes, 28 Kan., 174; Nieman v.
Ry. Co., 61 N. W., 519; Jones v. Bank, 37 N. E., 338.)

The second ground of demurrer is that several causes
of action against several defendants are improperly joined.

The point upon which this cause of demurrer is alleged is that each owner of real estate has a cause of action for threatened trespass against each of the several sheep owners made defendants in the court below. The defendants are not charged with acting jointly; but that is negatived by the allegation "that the defendants and each of them," also "their said several large bands of sheep." The use of the word "several," and "each of them," clearly indicates that the defendants are not acting in conspiracy or jointly, but severally, each for himself. Therefore, if the plaintiffs have a cause of action, it is a several cause of action against each of the defendants, and there is an improper joinder of causes of action against several defendants.

The third cause of demurrer is that separate causes of action against several defendants are improperly joined. The first cause of action relates to the private lands of the plaintiffs, the second cause of action to public lands, although this distinction is not as clear in the second amended petition as it might be made. The first cause of action does not state facts sufficient to entitle plaintiffs to the relief demanded for the reason that the plaintiffs do not allege the insolvency of the defendants or any of them, nor does it appear from any facts alleged that they do not have a complete and adequate remedy at law for the injuries they complain of.

The petition does not state facts sufficient to entitle plaintiffs to an injunction against the defendants preventing the latter from entering upon and using the public domain for grazing purposes, and the temporary injunction was too sweeping, as the plaintiffs cannot, under any authority that we have been able to discover, secure an injunction that will protect them in exclusive use of public domain. (Buford v. Houtz, 133 U. S., 320; McGinnis v. Friedman, 17 Pac., 635; Martin v. Platte Valley Sheep Co., 12 Wyo., 432.) The misjoinder of parties was also raised by answer, and is clearly disclosed by the evidence. The findings of fact are not sustained by the evidence as to trespass upon the private lands.

The temporary injunction was improperly granted, as we maintain, upon the whole tract, but there can be no dispute that it was improperly granted as to the public domain, and the court should have so found, and should have ordered that it be dissolved as to such government lands. The evasive manner in which the conclusion of law is worded makes it somewhat uncertain as to the condition of the injunction relative to the public domain. If it was properly granted, it was not dissolved, but is made perpetual forever.

*W. S. Metz, J. L. Stotts, M. B. Camplin* and *Spencer Smith,* for defendants in error.

The demurrer interposed by the defendants in the court below was upon several grounds. As to misjoinder of parties plaintiff, the petition discloses that the plaintiffs were using jointly the private lands owned by the individual plaintiffs in the running, and handling of their stock and pasturing thereon, that was about to be destroyed by the threatened trespass of the sheep belonging to the defendants in the court below, and for this reason the plaintiffs were entitled to be joined in the petition. The demurrer was also interposed upon the ground that separate causes of action against several defendants were improperly joined. The petition and evidence show that the defendants in the court below were acting together and were proceeding with one common purpose to take possession of the range and pasture the grass on the private lands in the possession of the plaintiffs in the court below, as well as the range and the grass growing upon the public range occupied by them. This was sufficient reason for uniting the defendants in the petition in question.

The above grounds were not urged by counsel in the court below in their argument, and did not seem to be insisted upon by them, but they insisted upon and argued at great length the following grounds for demurrer to the petition of the plaintiff, viz: That the first and second causes of action in plaintiff's petition did not state facts

sufficient to constitute a cause of action, and upon this question of two causes of action the matter was argued by counsel upon both sides in the court below.

The demurrer was overruled by the court for the following reasons, as counsel understood them, viz: First, that the plaintiffs in the court below were entitled to an injunction restraining the carrying out of the wilful threat, and wilful and unlawful attempt to injure and destroy the property of the plaintiffs, not only on the private lands, but on the unoccupied government lands where the threatened trespass and the threatened destruction and damage to the live stock of the plaintiffs was evidently wilful, and without any necessity on the part of the defendants. In other words, as the petition alleged, that the defendants were possessed of ample range to fully feed and supply their herds of sheep with ample pasturage and feed for the coming winter without going upon the range and destroying the property of the plaintiffs. That such a trespass upon their stock and destruction thereof was needless on the part of the defendants, and must have its origin in wilful intention to injure and damage the plaintiffs in their live stock business. Second, for the reason that the petition set out the private lands and the allegation that there was threat and attempt to injure and destroy the grass growing upon the private lands in the joint use of the plaintiffs. We think that a court of equity was justified in overruling the demurrer upon either of the grounds mentioned, for the reason that a court of equity will prevent a threatened and unnecessary damage and destruction to a person's property by a wilful and needless trespass, even if the other party may have a technical right to go on the grounds in question. It certainly will be conceded by us that the defendants had a right to go upon the government lands and to pasture the same. And the evidence shows that they were occupying the government lands at the time of the commencement of this suit, and on said government lands they had abundant feed and pasturage for their sheep without interfering with or

molesting the cattle belonging to the plaintiffs, so that the defendants cannot say that they were denied the use of the government lands, and they cannot say that they had not ample feed and pasturage upon the government land then occupied by them without trespassing upon the occupancy of the plaintiffs. We do not understand that a man or a set of men have an equitable right (under their privilege to go upon the public domain) to wilfully injure and destroy the live stock of another occupying a different portion of the public domain simply because they maintain that they have a technical permission of the government to go upon such public domain occupied by the other in carrying on a legitimate business. It is conceded by us that if the sheep of the defendants had not sufficient pasturage without going upon the public lands in the occupancy of the plaintiffs, they would have a legal and equitable right to drive their stock upon said public domain occupied by the plaintiffs, but they have no right, morally or otherwise, to needlessly drive their stock upon another's possession and destroy his stock wilfully. And we insist that a court of equity has jurisdiction to restrain a threatened, wilful injury and damage to one's property, although done under the technical form of law. There is but a permission of the United States Government at best, for any stockman to occupy the public domain in the pasturage of his live stock, and we do not believe that such a bare permission to go upon the public domain and pasture live stock gives a right to unnecessarily destroy another's property by driving sheep upon the range occupied by such property; and especially would that be true when there was no necessity for such act. And entertaining this view, the court below certainly was right in its order overruling the demurrer and preventing during the winter of 1902-3 the destruction of the live stock of the plaintiffs by the wilful act of the defendants. This order overruling the demurrer was only in existence and was made for the purpose of carrying the property of the plaintiffs through the winter of 1902-3 without destruction. It was in fact changed and modified upon the final trial of

said cause when the matter came on before the court for final determination after the winter was gone. After the court overruled the demurrer, the defendants concluded to file their answer upon the merits of the case and go to trial. Having done this, they waived all questions raised by the demurrer excepting the question of whether the petition contained facts sufficient to constitute a cause of action, and any questions of jurisdiction that might arise.

It is a well settled principle of law that if a defendant pleads over to a petition that is adjudged good upon demurrer, he waives the demurrer excepting the ground of demurrer that charges that the petition does not state facts sufficient to constitute a cause of action, unless there is a statute that especially declares that pleading over is not a waiver. (Aurora City v. West, 7 Wall.,92; Campbell v. Wilcox, 10 Wall., 421; Mitchell v. McCabe, 10 O., 406; 6 Ency. Pl. & Pr., 363.)

It is only Healy, Patterson & Healy that are appealing. The petition charged them with threatening to go upon the premises in question and wilfully and intentionally injuring and destroying the property of the plaintiffs. The evidence shows that they not only made the threats but carried them out, even in defiance of the court's order, and added to the causes of action that were in existence at the time that petition was filed, and actually trespassed upon the possession of the plaintiffs, and judgment was rendered against them permanently restraining them from going upon the private lands in the joint possession of the plaintiffs. How can they now complain of the judgment under the pleadings and evidence? They seek to escape, according to the argument of their counsel, upon the proposition that there is a misjoinder of plaintiffs and a misjoinder of causes of action against them. If they have trespassed upon the joint possession of the plaintiffs, and if they have trespassed upon the grass used and held in the joint occupancy and possession of the plaintiffs, and have destroyed the same and have wilfully threatened to do so, upon what ground can they escape liability to the joint plaintiffs?

It is a well settled principle that when a court has reached a proper conclusion and rendered a proper judgment in a cause, that corrects any error committed prior thereto, and that no appellate court can set aside a legal, just and righteous judgment where there is evidence and pleadings to support the same. (Alexander v. Alexander, 5 Ala., 518; Ketchum v. Coal Co., 88 Ind., 515; Black v. Lamm, 12 N. J. Eq., 108; Lansing v. Russell, 13 Barb., 510; Grey v. Simon, 2 Pa., 348; Stepton v. Pollord, 30 Gratt., 689; Kline v. Miller, 8 Md., 275; Curtis v. Brown, 29 Ill., 201; 11 Ency. Pl. & Pr., 1071; Weed v. Weed, 25 Conn., 494; Right v. Freeman, 64 Ill. App., 421; Bombard v. Coffess, 59 Ia., 85; Sess v. Fuhrman, 31 Mo., 470; Warden. v. Sweeney, 86 Wis., 161.) If there was any error of the Court Commissioner in granting an injunction over government land, or any error in the ruling of the court on demurrer as to said land, the court corrected it in modifying the restraining order in the final judgment and limiting the order to the private lands in the joint possession of the plaintiffs.

POTTER, CHIEF JUSTICE.

The defendants in error, thirteen in number, joined as plaintiffs in bringing this suit against the present plaintiffs in error and several other parties as defendants, to enjoin alleged threatened trespasses with sheep upon lands alleged to constitute, and for many years to have constituted, the common or joint range and grazing or pasture ground for the cattle and horses owned by the several plaintiffs. As described in the original petition, the lands constituting such range consist of nine entire townships, according to the United States survey, viz: Townships 45, 46, 47 and 48 of ranges 74 and 75, and township 44, in range 75; and several tracts, varying in area from forty acres to a section, scattered here and there through a number of other adjoining or neighboring townships east, south and west of said nine townships, which last mentioned tracts are respectively either owned or held under lease by

one or the other of the plaintiffs.  But according to the second amended petition, upon which the cause was tried, the range comprises all the lands in every township mentioned in the petition, thus including a territory embracing twenty or more townships.

In nearly every township within such territory there are a few scattering tracts of land held by private ownership, and belonging to one or other of the individual plaintiffs, but no tract so held is owned by the plaintiffs or any number of them jointly.  All the remaining lands, and they very largely predominate, are vacant unappropriated public lands of the United States.  A few instances will serve to illustrate the proportion between the public and private lands and their comparative situation.  In township 48, range 75, the only private lands are school sections 16 and 36, and forty acres in section 22.  In the township adjoining on the east, school sections 16 and 36, and 160 acres in section 23, are the only lands held by any sort of private ownership, while in the next eastern township, the private lands are confined to section 36.  In township 47, range 75, there are no private lands.  In the adjoining township on the south, viz, 46, range 75, the private lands are section 16, forty acres in section 5, one hundred and twenty acres in section 7, the south half of section 19, and the northwest quarter of section 29.  In the other townships, with perhaps two exceptions, the proportion of public lands is even greater.  In one township, viz, 46, range 72, the private lands probably amount to three sections, mostly located in the two southern tiers of sections.  All the lands in the entire territory referred to, public and private, are open and unenclosed, and none of them appear to have been cultivated.

The plaintiffs below are severally, not jointly, owners of horses and cattle, and they are, and have been for many years severally engaged in the live stock business, raising, feeding, grazing and disposing of live stock in Weston County, wherein the lands aforesaid are situated, and are taxpayers in such county.  The cattle and horses of the several

plaintiffs run at large, and it is alleged in the petition that the plaintiffs are and for years have been in possession of all the lands aforesaid, including the government lands, and are the owners and in possession of all the springs, streams and waters thereon; and that the same are in actual use by the plaintiffs in the grazing, feeding and watering of their cattle and horses; and that the only means for the subsistence of such animals from the commencement of the suit, November 24, 1902, until the spring of 1903, are the grasses and herbage upon said lands and the waters thereon.

It is alleged in the petition that the defendants, and each of them, are possessed of large bands of sheep, and, at the time of the commencement of the suit, were in close proximity to the lands aforesaid, and had declared their intention of going upon said lands, and to usurp the same to their own exclusive use, and to graze and feed their sheep upon the herbage and grasses growing on said lands, and to water their sheep from the waters thereon; and had threatened, and were proceeding to carry the threat into execution, to enter upon said lands and waters for the purposes aforesaid, without the consent of plaintiffs, and in violation of their rights.

It was alleged, and evidence was introduced to establish it as a fact, that the effect of taking several large bands of sheep upon the lands described, or upon any range, would be to take the same into the exclusive possession of the sheep owners, for the reason that the habits of sheep in grazing and traveling are such, that cattle or horses cannot remain or graze upon the same range, or in the same immediate locality; that sheep trod out the grass roots, eat the grass close to the ground, and that as they are closely herded in bands approximating 2,500 or 3,000 head, attended by herders and dogs, cattle and horses are necessarily compelled to abandon any range upon which sheep are so brought. It was, therefore, alleged that the effect of the threatened acts of the several defendants would be to

destroy the grasses upon the range, deprive the plaintiffs of the necessary means of subsistence for their cattle for the then ensuing winter, and the exercise by defendants of exclusive possession of the said range.

It was also alleged that the defendants had ample range and pasture facilities and water for their sheep in ranges 76 and 77, west of the lands in controversy, which range had been formerly occupied by plaintiffs, but had been abandoned by them to the defendants; and that the use of the present range of plaintiffs was not necessary for the care or sustenance of the sheep of the defendants.

The original petition did not specify the particular ownership of the private lands; but in the amended petition those facts are set out by stating the name of the owner of each tract of private land; and, from such allegations, which were admitted on the trial to be true, it appears that five only of the plaintiffs own or have any title to any land within the territory composing the range aforesaid; and that the majority of the lands held in private ownership are owned by one of the plaintiffs, viz: George A. Keeline, and he owns one or more tracts in nearly every township. Hence, it appears that the various tracts owned by him are widely separated, some of them being in the neighborhood of thirty miles apart.

Spencer K. Smith, also one of the plaintiffs, owns, or has a legal estate in, a single tract, viz: Section 16, in township 48, range 74. Frank Smith, another plaintiff, owns or has leased the two school sections in township 44, range 75, forty acres in section 13, and 120 acres in section 22, in the same township. The firm of George A. Keeline & Son, who are also plaintiffs, own, or have a legal estate in, a few tracts in three or four townships, not exceeding a section in acreage in either township; and each one of their separate tracts is located several miles from the others, there being at least ten to fifteen miles between some of them. Oscar Keeline is alleged to be the owner of a forty-acre tract on the extreme western edge of the region in

question, eighty acres in the extreme southeastern part, and a single forty-acre tract in one of the nine townships aforesaid. None of the other plaintiffs, two of whom are corporations, one a partnership, and the others private individuals, are alleged or shown to own, or to have title to, any land in the described territory. In the amended petition, however, in connection with the allegation that one of the plaintiffs, naming him, owns a tract particularly described, it is alleged that such owner, and certain of the plaintiffs, naming them, are and were at all times mentioned in the petition in the possession and entitled to the possession of the same. The effect of such allegations is that though a single plaintiff is the owner of the tract described, the others, who are named, are jointly with him in possession and entitled to the possession thereof. But some of the plaintiffs, at least three in most instances, are omitted from those allegations; and there is therefore no allegation that *all* of the plaintiffs are even jointly in possession or entitled to the possession of any tract of private land.

The object of the suit, however, was evidently not so much to enjoin an invasion of the private lands by the sheep of the several defendants, as to prevent such sheep from being brought upon any of the lands, public or private, within the described territory. The allegations as to private ownership of scattering unenclosed tracts would seem to have been inserted by the pleader upon the theory that they would more clearly show the right of plaintiffs to the range, the watering places for live stock being located upon such private lands. No distinctive threats or anticipated injuries are alleged in respect to the private lands. In setting forth the acts threatened by defendants, the public and private lands are not distinguished except so far, perhaps, as the defendants are charged with an intention or threat to water their sheep from the water belonging to the plaintiffs. The injury which it is alleged the plaintiffs will suffer if the threatened acts of defendants be carried into execution is the deprivation of their

usual and customary range for the grazing of their cattle and horses.

Upon the filing of the petition a temporary restraining order was issued by the District Court Commissioner, in the absence of the judge from Weston County, where the suit was instituted. With some immaterial modifications that order continued in force until the trial of the cause and final judgment in 1904 in the District Court in Sheridan County, to which county the cause had been transferred for trial. During the trial the cause was dismissed on motion as against some of the defendants, and the judgment rendered in the cause which is here complained of was rendered against the present plaintiffs in error only, viz:· Patrick Healy, Sr., Adam Patterson, and Patrick Healy, Jr., partners as Healy, Patterson & Healy.

The judgment made perpetual the temporary restraining order, forever enjoining the above named parties, plaintiffs in error here, from in any manner trespassing, or driving, pasturing or feeding their bands of sheep over or upon *the private lands in the joint use and occupancy of the plaintiffs* set forth in the petition; from in any manner using or polluting the waters upon such lands, and from in any manner molesting, disturbing, or driving with dogs, or in any way interfering with the herds of horses and cattle belonging to plaintiffs• while ranging upon the public government lands in the vicinity of said private lands or elsewhere upon the public domain, and judgment was also given against the plaintiffs in error for costs.

It will be observed that the judgment ignores the question of trespassing or grazing upon the public lands. Though as to such lands there is no express dissolution of the temporary restraining order, the injunction is confined to the lands held by private ownership, so far as trespassing upon lands is concerned; and a dissolution as to the public lands was probably intended and is doubtless to be implied. The findings, however, are not entirely silent as to public lands. The court stated its conclusions of fact

and law separately. It found that the plaintiffs were and had been in the joint use and occupancy of the private lands set out in the second amended petition; that they were jointly using and occupying the government lands adjoining and in the vicinity of said private lands in the feeding, grazing, ranging and management of their horses and cattle; that said private and public lands constituted the home range of the plaintiffs for their cattle and horses; that the grass growing thereon was necessary for the sustenance and maintenance of the horses and cattle during the winter of 1902 and 1903, and has continued to be necessary for that purpose; that the defendants, at the time of the commencement of the suit, were owners of large bands of sheep in the vicinity of such lands, and if said sheep were allowed to pasture upon the private lands and the home range on the public domain, such use would destroy the pasturage of both the public and private lands, and render the same worthless for the use of plaintiffs during the winter aforesaid, and that irreparable injury would result to plaintiffs, and each of them, by such destruction of the grass and herbage on the private lands in their joint use and occupancy. It was further found that the particular defendants who are plaintiffs in error here were threatening and were about to drive and pasture their sheep upon the private lands, at the commencement of this suit; and that, after the commencement of the suit, they did so drive and pasture their sheep upon the private lands, in the joint use and occupancy of the plaintiffs, and threatened to continue and repeat such trespasses. The court also found that said defendants disturbed and molested, and unlawfully drove with dogs the horses and cattle of plaintiffs while ranging on the public lands and said home range, and that they will continue to do so unless restrained by the order of the court; that there was ample feed elsewhere than upon the said range of the plaintiffs for the sheep of defendants.

Upon the findings of fact thus briefly outlined, the court announced as conclusions of law: (1) That the temporary

restraining order was properly granted and should be made perpetual forever restraining these plaintiffs in error from trespassing with their bands of sheep and otherwise over or upon the private lands, and from the use and pollution of the waters thereon. (2) That they should be restrained from molesting, disturbing or driving with dogs, the cattle and horses in the joint control and management of the plaintiffs while ranging upon the public lands described in the petition. (3) That the plaintiffs have no speedy or adequate remedy at law, and that injunction is their proper remedy.

Though the temporary restraining order was held to have been properly granted, it was made perpetual as to the private lands only, which constituted a very small fraction of the area embraced in the temporary order. If that order had indeed been rightfully granted, and there was any ground for its continuance, there would seem to be no apparent reason for confining its future application. Had the court found that it had been properly granted as to the private lands, but wrongfully as to the public lands, the findings would we think be more consistent, or at least better understood. From the fact that the court found that injury would be suffered by the plaintiffs in consequence of the pasturing of defendants' sheep on the public lands, that the defendants had ample pasturage elsewhere without invading the range of plaintiff, and that the temporary order, which embraced the entire range, public as well as private lands, had been rightfully granted, it seems apparent that some effect was accorded the allegations and proofs as to the range inclusive of public lands, and it is not improper to be assumed that the allegations and proofs respecting the range and the public domain therein, in some measure at least, induced the final judgment perpetuating the injunction in part. Otherwise, the findings concerning the public lands, in the absence of a stated conclusion respecting them, are totally unexplained.

The court may have recognized a want of equity in the case as to the public lands. If so a finding to that effect

would have been appropriate, and the injunction should have been dissolved as to these lands. But upon the face of the findings the theory is warranted, we think, that the threats and acts respecting the public lands, or ·the range as an entirety, were in some degree at least deemed to support the judgment that was entered.

But upon a careful consideration of the record we are clearly of the opinion that the judgment cannot be sustained in any particular. It is manifest that since the judgment, the theory of the case from the standpoint of the plaintiffs, has greatly changed since the trial. Up to the time of trial, and during the trial, the plaintiffs were insisting upon their right to the range, public lands as well as private lands, to the exclusion of the defendants. Much of the testimony introduced on behalf of the plaintiffs is to be understood upon no other theory. The private lands were adverted to in the testimony only incidentally, and no tract held in private ownership, with a single notable exception, was referred to by description or identified by any witness.

And, though it is now contended by counsel for plaintiffs below that the injunction ought to be sustained as to private lands, because the defendants have no right to trespass thereon, and it is conceded that the plaintiffs have no exclusive right to the public lands, it is nevertheless argued, and we are at liberty to assume some purpose in the argument, that equity ought to enjoin one stockgrower, who has plenty of feed on his own range, from going upon and depasturing the range occupied by another, though such range consists of public lands. But that argument ignores the elementary principle that equity will not lend the aid of its injunctive power to enforce mere moral obligations. (High Inj., Sec. 20.)

No case has been cited holding that one stockgrower may enjoin another from grazing or pasturing his live stock upon the public domain. We believe that whenever the question has been presented the right to an injunction for

such a purpose has been denied. (McGinnis v. Friedman
(Idaho), 17 Pac., 635; Buford v. Houtz, 133 U. S., 320;
S. C. 5 Utah, 591; Martin et al v. Platte Valley Sheep Co.,
12 Wyo., 432.) In McGinnis v. Friedman, *supra,* the suit
was very similar to the one at bar. It was brought to en-
join the pasturing of sheep upon public lands which had
been used by the plaintiffs as a cattle range. The injunc-
tion was denied. The court said: "The appellants in this
case do not pretend to connect themselves with the land by
color of title, or to hold the same under any possessory
claim or right, with a view of entering the same under any
of the general laws of the United States; hence we are un-
able to see that they have shown in themselves any clear
legal or equitable right to the pastures grown upon the
said lands." The claim was made there as here that the
plaintiffs had a right by virtue of their former exclusive
possession. But the learned court very pertinently re-
marked that a court of equity should not interfere to en-
force such a claim by injunction, in view of the Act of
Congress forbidding the assertion of a right to the exclu-
sive use and occupancy of any part of the public lands
without claim, color of title made or acquired in good faith
with a view to entry under the land laws.

The settlers upon the public domain in the territory em-
braced within the public land states customarily, without
hindrance or objection on the part of the government, en-
joyed the vacant public lands as public commons for the
free pasturing of domestic animals, which, according to
their custom, were allowed to run at large. In consequence
of such custom and the unenclosed condition of the country
in the early days of its settlement the common law rule that
required a man to confine his cattle or else respond in dam-
ages for their trespasses upon the unenclosed premises of
his neighbors was held not to prevail. On the contrary the
doctrine was established that actionable trespass was not
committed by cattle lawfully running at large, wandering
upon and depasturing unenclosed lands even of a private

owner. (State v. Johnson, 7 Wyo., 512.) But an owner is not permitted under that doctrine to wilfully and knowingly drive his cattle or other live stock upon the premises of another, though they be unenclosed, against the consent of the owner of the premises. (Cosgriff v. Miller, 10 Wyo., 190.)

The custom of making free use of the public lands for the purposes aforesaid, which had its inception in the region where arable lands were plentiful, culminated in the use, unrestricted save as to capacity, of the vast areas of unpeopled and unenclosed public lands on the arid prairies and mountain ranges of the west for the raising of great herds of cattle, horses and sheep, without other means of sustenance than that obtained by grazing upon the native grasses and herbage. And in this section of the country, largely depending upon the free grazing of the public domain, stockgrowing became a gigantic industry.

The government made no attempt to interfere with this use of the public domain, so long as it remained open to everyone seeking to enjoy the privilege, and not until a comparatively recent period did Congress or any department of the government make any express provision or declaration upon the subject. Having for so long a time acquiesced in the use aforesaid of its unappropriated and unreserved lands, it became understood that it impliedly licensed such use; and the existence of such an implied license was judicially announced by the Supreme Court of the United States in the case of Buford v. Houtz, *supra.* Under that license the public lands were and are free to everyone who may seek to use them for grazing or pasturing live stock, so long as they are unappropriated and not expressly reserved or set apart for other public purposes.

No doubt, induced by the idea of self-protection and even more laudable sentiments, there existed in the range country among neighboring stockgrowers a sort of moral recognition of a prior and better right in the first occupants of any range, at least if the same was stocked to its fair

capacity; though the moral obligation supposed to rest upon one owner of live stock not to turn his cattle or other stock upon his neighbor's range did not prevent the territory of a prior occupant from being more or less invaded, if not by former neighbors then by strangers or newcomers; and the more frequent disputes that have arisen in recent years, usually in consequence of the taking of sheep into what had theretofore been regarded or claimed as strictly cattle territory, have attracted the attention of government, so that now the question of suitable governmental control of the use of the public grazing lands is being agitated.

But the government was never a party to any arrangement, tacit or otherwise, between stockgrowers in the matter of range rights, or the occupation of the public lands, and at no time has it recognized the right or claim of any person, or number of persons, to the exclusive use of the public lands for grazing or other purposes, on account of prior occupation or otherwise. So far as the government is concerned the theory at all times prevailed that the vacant public lands were public commons free to the use of all citizens alike.

With the incoming of a constantly increasing number of settlers, and the rapid passing into private control, by entry under the land laws, of the available lands along the natural streams, as well as the gradual overstocking of the range in some localities, and the encroachments by sheep owners with sheep in the charge of herders in others, men here and there began to claim and exercise exclusive control over the lands embraced within their customary ranges, and endeavored to prevent others from grazing thereon. This assumed control, was, in numerous cases, indicated by surrounding the range or a part of it with a fence.

Such abuses of the privilege of grazing upon the public lands were soon brought to the knowledge of the officers of the Land Department and other government officials and doubtless caused the first official declarations on the subject.

The Commissioner of the General Land Office, in his annual report for 1882 said: "The unimpeded progress of settlement will in due time bring the whole of the territory of the United States within the compass of private ownership. Meanwhile the unappropriated public lands suitable for grazing herds of cattle should. be equally free to the enterprise of all citizens unembarrassed by attempts at exclusive occupation." And he recommended the enactment of a statute imposing penalties for the unlawful enclosure of public lands, and preventing by force or intimidation legal settlement and entry. And, on April 5, 1883, the commissioner, in a circular letter to Registers, and Receivers of Land Offices and Special Agents, said: "The fencing of large bodies of public lands beyond that allowed by law is illegal, and against the right of others who desire to settle or graze their cattle on the enclosed tracts. *Until settlement is made, there is no objection to grazing cattle or cutting hay on government land, provided the lands are left open to all alike.*" And the commissioner's annual report for that year, again called attention to the necessity for national legislation to prevent the unlawful exclusive occupation of the public domain.

One of the earliest decisions, if not indeed the first, respecting the right of the government to enjoin the maintenance of fences unlawfully enclosing parts of the public domain, was delivered by Judge Sener, then Chief Justice of Wyoming Territory, while presiding in the District Court of Laramie County in 1883, in the hearing of the case of United States v. Swan et al. Among other things the learned judge said in explaining the result of the enclosure there complained of: "But it is an enclosure of that which belongs to or ought to be left free to the public, so that all the public may go thereon until some one lawfully segregates it and makes it his own." In that case it was held that injunction would lie at the suit of the government to restrain the maintenance of the unlawful enclosure.

Finally, by an Act of February 25, 1885, Congress expressly prohibited the enclosing of public land by anyone without claim or color of title made or acquired in good faith with a view to entry thereof at the proper land office under the general land laws of the United States; and also prohibited the assertion of a right to the exclusive use and occupancy of any part of the public lands without claim, color of title, or asserted right as above specified as to enclosure. And penalties were provided to be imposed upon those violating the provisions of the act. (23 Stat. L., 321; 6 Fed. Stat. Ann., 533-536; 2 U. S. Comp. Stat., 1524.)

The second amended petition averred threats and a purpose on the part of the defendants to go upon the range in question and usurp the same to their exclusive use, and to drive the cattle and horses of the plaintiff therefrom. But those allegations are not at all sustained by the evidence. There is absolutely no evidence of any act or threatened act on the part of the defendants, in respect to the public lands, than that of taking their several bands of sheep upon such lands in the usual manner of herding sheep and allowing them to graze there. There is some testimony to the effect that cattle will not voluntarily remain upon the same range with sheep, and that after the plaintiffs in error here had taken their sheep upon a part of the range, subsequent to the commencement of the suit, the cattle of plaintiffs moved to other neighboring lands; though that was more particularly the result as we understand, of the fact that the sheep so taken on the land completely depastured that part of it covered by their grazing. There is also testimony showing that sheep herders and their dogs often drive cattle away from the immediate vicinity in which the sheep under their charge are feeding. But there is an entire absence of testimony to show that the defendants, their agents or employees, either with or without dogs, drove or threatened to drive the cattle or horses of plaintiffs or others from the range in controversy, or any part thereof, or molested them in any manner or at-

tempted or threatened to do so. The finding on that point is not supported by the evidence.

It cannot be held, we think, that by merely grazing a herd or herds of sheep under the charge of a herder or herders, upon vacant public lands, the owner usurps the exclusive use or possession thereof, in the sense at least in which exclusive use or possession of the public domain is declared or held unlawful or opposed to public policy. In the absence of statutory provision, or other governmental regulation to that effect, there is no authority for confining the privilege of grazing upon the public lands to animals running at large, and denying that privilege to sheep under the control of herders.

Upon any theory of the case, therefore, no ground is presented for equitable interference as to the use of the public lands by defendants; conceding that threats of driving or actual driving of another's cattle from the public range, or unlawfully molesting them, would furnish ground for injunction. The several tracts of private land, it will be remembered, are so widely separated that sheep or other live stock in charge of herders may easily be grazed upon the public lands without crossing or touching the land of any private owner. The fact that nearly the entire available water supply for the watering of stock was situated upon the private lands certainly constitutes no ground for requiring the defendants or other sheep or live stock owners to keep off the vacant public lands in the territory in question. It is not to be presumed that the defendants would trespass upon the private lands as a necessary consequence or incident of enjoying the privilege of grazing the public lands. At any rate the possibility of such trespass furnishes no proper ground for restraining the use of the public lands. If it did then by merely leaving unenclosed a tract of private land containing a supply of water the owner might exclusively control a greater or less area of the public domain. But as will appear when we come to the testimony the plaintiffs in error here con-

trolled water facilities a few miles from the western portion of the range in question, and it was therefore not only possible for them to graze upon the public lands on that range and return to their own lands to water their stock, but they did in fact do so.

Though the defendants in error are not entitled to exclude the plaintiffs in error from the public lands, nor to enjoin the grazing of their sheep thereon, the latter have no right to wilfully and knowingly direct or drive their sheep upon the private lands, although they are unenclosed, and may contain the only available or most convenient water supply in a particular neighborhood.

The rule that actionable trespass is not committed when domestic animals which are lawfully permitted to run at large go upon and depasture unenclosed premises of a private owner does not obtain in the case of live stock under the control of a herder, or whose movements are directed by the owner or others. The owner of uninclosed lands is presumed to know that certain kinds of live stock are allowed by law and custom to run at large, and that such animals will likely wander upon his ground; and he is, therefore, held to assume the risks of such trespasses by the act of leaving his premises open and unprotected by a lawful fence. But one may not avoid liability for wilfully driving cattle or sheep upon the premises of another, though uninclosed, knowing the same to belong to a private owner; and especially is that true when it is known that the landowner has forbidden such acts. (Cosgriff v. Miller, 10 Wyo., 190.)

In view of the rule appertaining to animals roaming at large in a lawful manner, equity will not enjoin their owner or owners from allowing them to trespass upon or depasture uninclosed premises. (Martin v. Platte Valley Sheep Co., 12 Wyo., 432.) But there can be no doubt that in proper cases, where the other necessary elements of equity jurisdiction are present, injunction will lie to restrain a live stock owner from wilfully and knowingly driving or turn-

ing his stock upon the uninclosed premises of a private owner. In such cases, however, as in all other cases where injunctive relief is sought, it is necessary to show a reasonable probability of the commission of the wrongful act and a well-grounded apprehension of resulting injury.

Injunction is a strong and powerful remedy; for its violation parties may be punished as for contempt upon summary proceedings. It should not, therefore, be granted merely to protect a right where no actual or threatened violation of that right appears. Mr. High says: "Nor will a court of equity lend its aid by injunction for the enforcement of right or the prevention of wrong in the abstract, and unconnected with any injury or damage to the person seeking relief." (High on Inj. (3d Ed.), Sec. 1.) And again, "An injunction, being the strong arm of equity, should never be granted except in a clear case of irreparable injury, and with a full conviction on the part of the court of its urgent necessity. To justify the court in granting the relief, it must be reasonably satisfied that there is an actual intention on the part of defendant to do the act which it is sought to enjoin, or that there is probable ground for believing that, unless the relief is granted, the act will be done. And it is not a sufficient ground for interfering that, if there be no such intention on the part of defendant, the injunction can do no harm. Nor will the court interfere when the evidence shows that there is no probability of defendant doing the act which it is sought to restrain." (Id., Sec. 22.)

Mr. Pomeroy, in the late edition of his work on Equity Jurisdiction, states the doctrine with special reference to trespass, as follows: "In the subject of trespass as elsewhere the main function of an injunction is to preserve property from future injury. Courts will not, however, enjoin against a mere speculative or possible injury. Instead, a reasonable probability of the injury resulting must be shown. Hence, if defendant has neither done nor threatened any wrongful acts, and denies his intention to do the

acts against which an injunction is sought, it will be refused. On the other hand, if plaintiff shows that defendant has threatened to do acts of the kind which equity enjoins, that is enough to rest his case upon." (5 Pomeroy's Eq. Jur., Sec. 501.)

It is hardly necessary, therefore, to suggest that the solitary facts that plaintiff owns a tract of uninclosed land, and the defendant a herd, or it may be herds, of sheep, which might possibly be driven upon plaintiff's land, are not enough to justify the interposition of equity through its "strong arm" to prevent such possible trespass. If that ground should be held sufficient, then every land owner might apply for an injunction to restrain every stockgrower in his more or less extensive neighborhood from wilfully turning his stock upon the former's uninclosed land, though there may have been no acts of the kind either committed or threatened.

It appears by the evidence in this case that the plaintiffs in error own lands on Powder River, a stream running in a northerly direction, about eight or ten miles west of the western boundary of the alleged range of the plaintiffs; that the open range on the west side of said river has been used by the plaintiffs in error and other sheep owners for the purpose of grazing their herds; and that the plaintiffs in error at least had also for a year or more enjoyed as grazing grounds the lands east of the river embraced within ranges 77 and 76, in the locality in question. It will be remembered that the petition alleged that the open country in those ranges had been abandoned to the defendants by the plaintiffs. It also appears by the evidence, the same being admitted by one or more of the witnesses for plaintiffs below, that these plaintiffs in error in 1901, apparently without objection, drove and grazed their sheep upon a part of the range claimed by the defendants in error, presumably the public lands, there being no statement or showing to the effect that they had at any time prior to the commencement of the suit gone upon any of the tracts owned by either of the plaintiffs.

The evidence discloses that immediately before the commencement of this suit the plaintiffs in error, and the other defendants, were grazing their several bands of sheep on the east side of Powder River, and gradually working in the direction of the territory described in the petition; and that they had severally declared a purpose of going into that territory for the purpose of grazing their sheep upon the lands therein located. Nothing but general declarations of an intention to take their sheep into the territory, or on the range aforesaid, were shown. And those declarations were qualified as to time, the statements being that the sheep would be taken into the territory in question as soon as snow fell. No defendant was shown to have uttered any threat at any time to depasture or enter upon any private ground. It appears that upon nearly all the tracts of private lands signs had been posted forbidding trespass thereon; though, owing to the rolling character of the country, the sign on a particular tract might not be visible from every part thereof; and, further, that it was a matter of common knowledge in the neighborhood that the watering facilities within the territory aforesaid were located on private lands. Moreover, one of the plaintiffs in error testified that he knew the location of the private tracts and had instructed his employes not to go upon them.

To construe the declared intention of the defendants of going upon the range, which consisted so largely of public lands, as a threat to depasture or trespass upon the private lands is unreasonable. In this case we have a scope of country covering twenty townships, with but occasional and widely separated sections containing private land; and the latter is designated by signs, and many of them are well known because containing water holes or other facilities for watering stock. We are of the opinion that a statement of an intention to go into that country with sheep for grazing purposes cannot be construed as a threat to wrongfully take the sheep upon any part of the private lands. It is not to be presumed that the defendants intended to commit a

wrong. Having a right to go upon the greater part of the range, their expressed intention to go there must be taken as referring to such parts of the territory as it would be lawful for them to occupy. Upon the basis of previous threats, therefore, the evidence is clearly insufficient to justify an injunction restraining the plaintiffs in error from trespassing upon the private lands.

But it appears that the plaintiffs in error, notwithstanding the temporary restraining order, did, in fact, after the commencement of the suit, and some time in January, 1903, take several bands or herds of their sheep, each herd containing 2,500 to 3,000 head, into a part of the territory in question, and grazed them there for a period of six weeks at least; and that in March of the same year they took said sheep out of that territory, and, though the case was tried in 1904, there is nothing in the evidence to show that they returned to any part of that range, or threatened to return. During the period that they were on the range they grazed in a district about twelve or fourteen miles north and south, and ten or eleven miles east and west, in townships 46, 47 and 48, in ranges 74 and 75; the said six townships being located in the northwestern part of the plaintiffs' alleged range. It does not appear that they invaded any other part of the territory, which consisted, as above stated, of twenty townships at least. In grazing their sheep, a herd would be kept in one locality while the pasturage was sufficient, and then move along. Hence, so far as the evidence discloses, no tract of land was entered more than once.

While there are some general statements in the testimony of two or three witnesses to the effect that the plaintiffs in error, on the occasion aforesaid, depastured the private lands within the district above mentioned, we think the evidence insufficient to show that more than two of the private tracts were entered upon. Witnesses testify to seeing a herd of sheep belonging to plaintiffs in error, while under the control of a herder, upon section 36, in township

46, range 74, upon which tract there was no warning sign to indicate its private ownership; and the sheep remained some days upon that section and then were moved away. Another witness testified that he saw a herd of sheep upon another school section, but he was not asked to locate it, and did not do so. If the sheep had gone upon or depastured other tracts of private land, we think it could have been shown by testimony more satisfactory than the general statements found in the testimony.

But let it be conceded that the private lands embraced in the district grazed over were depastured by the sheep of plaintiffs in error. It would then appear that but a single trespass was committed upon such lands, without any threat of continuance, and without any showing of permanent injury. On the contrary, it is established that the plaintiffs in error thereupon left the range, and presumably did not return. Further than that, the private lands within the particular district so grazed over constitute but a fraction of all the private lands; and there is no showing that plaintiffs in error went upon any of the other lands or threatened to do so. It does not appear that after the commencement of the suit, or at any other time, they were within several miles of many of the tracts of private land; nor upon any tract of some of the individual owners. For instance, the evidence does not show that the sheep of plaintiffs in error were within the township embracing the lands of Frank Smith, one of the plaintiffs below. There is no allegation or showing of insolvency on the part of plaintiffs in error. Again, it appears that the latter own cattle which run at large upon the range in question, and there is no reason apparent for requiring them to prevent such cattle from straying upon the uninclosed grounds of private owners, which we think the judgment attempts to do.

Upon the facts aforesaid we fail to perceive any sound reason for the perpetual injunction even as to the lands held by private ownership. Within the well settled principles of equity jurisdiction in restraining trespass to realty, it seems to us that the showing made is clearly inadequate.

There exists, however, another and, if possible, more vital objection to the judgment in respect to the private lands; and that is the misjoinder of the plaintiffs below. Had there been a good cause of action on the theory of the petition to restrain the defendants from entering upon the open range jointly occupied by the plaintiffs, irrespective of the ownership of the lands, it seems probable that the joinder of the plaintiffs might have been held proper. But when the relief sought is confined to the several widely separated tracts of land owned respectively by, one or other of a few only of the plaintiffs, the case takes on quite a different aspect. We are aware that the rule allowing numerous separate claimants to join in equity against a single defendant, or a single plaintiff to sue several defendants, is broad and liberal. But there must be some sort of community of interest in something. Mr. Pomeroy says that the weight of authority is overwhelming permitting the exercise of jurisdiction in such cases, not only where there is a common title, or community of right or interest in the subject matter among the individuals joined, but where, without such common title, or community of right or interest in the subject matter, there is a community of interest among them in the questions of law and fact involved in the general controversy, or in the kind and form of relief demanded and obtained by or against each individual member of the numerous body. And though generally in the cases so holding the community of interest in the questions at issue and in the kind of relief sought has originated from the fact that the separate claims of all the individuals composing the body joined arose by means of the same unauthorized, unlawful, or illegal act or proceeding, the learned author asserts that even that external feature of unity has not always existed, and is not deemed essential. (Pomeroy's Eq. Jur. (3d Ed.), Sec. 269.) It is unnecessary for us to decide whether the plaintiffs could have properly joined to restrain trespasses by the same defendant upon different widely separated premises owned by them respectively within a more or less definite territory.

Here five only of the plaintiffs are alleged or shown to own any land, and, though there is an endeavor in the petition to show cause for the single suit as to the private property by alleging that certain of the plaintiffs, together with the owner, are jointly in possession, at least three of the plaintiffs are not connected with those allegations.

The evidence, however, fails, in our opinion, to show the joint possession alleged. It appears that such allegations are based solely upon the fact that the various individual plaintiffs allow their separately owned cattle and horses to run at large and range upon and over the same territory, that such animals are rounded up together, and that the respective owners of private lands on the range permit the stock of the other plaintiffs to feed and water at will upon their uninclosed premises. And it may be that there is an arrangement of some character in reference to the last mentioned matter; but the evidence as to such an arrangement is most general and quite unsatisfactory; one witness merely responding in the affirmative when asked if there was an arrangement to that effect.

Those facts do not, in our opinion, show a joint possession by the plaintiffs of any individual tract of land owned by some one of the plaintiffs. We observe nothing in the evidence that would prevent any private owner from fencing in or otherwise exercising exclusive control of his own premises at any time if he should choose to do so. We do not think any other plaintiff could legally call him to account for such action upon any fact disclosed by the testimony in this case. We are not convinced that the mere fact that a land owner allows his premises to remain open and accessible to cattle roaming at large, while he offers no objection to the cattle of his neighbors going thereon to graze, or perhaps tacitly acquiesces in such trespass, has the legal effect to place the owner or owners of the roving cattle in joint possession of the premises with the owner. The land of at least two of the five private owners was not trespassed upon, nor were there any threats of trespass thereon.

It is not perceived how they are interested in a community sense in the settlement of the controversy growing out of a trespass upon land of a different plaintiff or a threat to commit such trespass.

The question of misjoinder of plaintiffs was first raised by demurrer, which was overruled, and afterwards by answer. Treating the case as one to enjoin trespass upon the private lands, we are satisfied that the plaintiffs were improperly joined.

There is an entire absence of testimony to show any actual or threatened pollution of the water upon any of the lands of any of the plaintiffs. The evidence is that the waters were not polluted. There is a conflict in the evidence as to whether a herd of sheep will pollute a watering place, if allowed to water there. But as there had been no threats on the part of plaintiffs in error to water their sheep on the land of plaintiffs, and no satisfactory proof that they did so; and they having departed from the vicinity of such lands and watering places in March, 1903, it is not material, we think, what may be the usual effect upon a body of water of allowing sheep to drink there.

The judgment will be reversed, and vacated, and the cause remanded to the District Court to enter judgment in favor of the plaintiffs in error for costs, and dissolving the temporary restraining order.                *Reversed.*

BEARD, J., and VAN ORSDEL, J., concur.